[Civil No. 3124. Filed April 9, 1932.]

[9 Pac. (2d) 1020.]

# RALPH MURPHY, Appellant, v. ARTHUR RUSSELL, Appellee.

Messrs. Stockton & Perry, Mr. E. G. Frazier, Mr. Thomas P. Riordan and Mr. Stanley A. Jerman, for Appellant.

Mr. L. C. McNabb and Mr. W. E. Ryan, for Appellee.

LOCKWOOD, J.—Arthur E. Russell, hereinafter called plaintiff, brought suit against Ralph Murphy, hereinafter called defendant, to recover damages for an alleged malicious prosecution. The complaint set up in substance that defendant had maliciously and without probable cause charged that plaintiff was insane, and thereby procured his arrest and imprisonment for about three weeks on an insanity warrant, and that on the hearing of such charge plaintiff was adjudged sane. The case was tried to a jury and judgment rendered upon a verdict in favor of plaintiff in the sum of $4,500, and, after the usual motion for a new trial was overruled, this appeal was prosecuted.

There are some ten assignments of error, several of which contain a number of subdivisions, but we shall consider the case upon the questions of law necessary for its decision rather than on the specific assignments. We think it best, first, to lay down the general rules of law covering actions for malicious prosecution, so far as they are material in this case, and then to apply them to the facts herein.

We have stated the essential elements of such an action in the case of *McDonald* v. *Atlantic & P. R. Co.*, 3 Ariz. 96, 21 Pac. 338, as follows:

"In an action for malicious prosecution, the essential elements upon which it may be based are that there has been made a criminal charge by defendant against the plaintiff; that the charge was made maliciously and without probable cause therefor. If it was malicious, and yet there was probable cause, there can be no recovery. If there was no probable cause, and no malice, there is no action. Whether there was probable cause is a question of law for the court to determine, where the facts are admitted. If the facts are in dispute, the court by its charge should say what facts found by the jury will constitute probable cause. Malice is for the jury. They may find the element of malice from the want

of probable cause, but not necessarily. The burden is on the plaintiff to prove, by a preponderance of evidence, both malice and a want of probable cause. These principles have been so long and so deeply settled as to be unquestioned.''

We could multiply citations in almost unlimited number to sustain the foregoing declaration of principles, but they are so well recognized that it is unnecessary. Let us then apply them to the case at bar.

The court's instructions upon the question of probable cause were as follows:

''Probable cause, as applied to this case, is a belief such as a reasonably prudent and cautious person would under like and similar circumstances entertain, taking into consideration the acts and conduct of the plaintiff. In other words, if the acts and conduct of the plaintiff as disclosed by the evidence in this case were such as to cause a reasonable person situated as the defendant was to believe under all the circumstances that the plaintiff was insane, then the plaintiff cannot recover in this action. . . .

''In determining the question as to whether or not the defendant acted without probable cause in causing the arrest of this plaintiff on an insanity charge, the conduct and acts of the plaintiff in the light and under the circumstances as they appeared to said defendant at the time he made the complaint against the plaintiff should be taken into consideration by you, for the defendant had the right to act in the light of all the circumstances as they appeared to him at the time as a reasonable and prudent person. If you find by a preponderance of the evidence that the defendant acted upon appearances as they occurred to him in making the complaint of insanity against the plaintiff, and that said appearances were such that would lead a discreet and prudent person to believe that the plaintiff was in fact insane, the defendant would be justified in making the charge, although it should later turn out that he was deceived and that the plaintiff was in fact sane.''

These were all the instructions given on this subject.

Whether a given state of facts constitutes probable cause is always a question of law to be determined by the court, and it cannot relieve itself of this burden by casting it upon the jury. *McDonald* v. *Atlantic & P. R. Co., supra; Stewart* v. *Sonneborn,* 98 U. S. 187, 25 L. Ed. 116; *Ball* v. *Rawles,* 93 Cal. 222, 27 Am. St. Rep. 174, 28 Pac. 937; *Bell* v. *Keepers,* 37 Kan. 64, 14 Pac. 542; *Moore* v. *Northern Pac. R. Co.,* 37 Minn. 147, 33 N. W. 334. The only function of the jury in this respect is to determine what the actual facts were. If, therefore, taking the evidence in the strongest manner in favor of plaintiff, the court is of the opinion that as a matter of law the facts so proved constitute probable cause for the prosecution, it is its duty to instruct the jury to return a verdict in favor of the defendant. *Jirku* v. *Brod,* 42 Cal. App. 796, 184 Pac. 413; *Brown* v. *Selfridge,* 224 U. S. 189, 56 L. Ed. 727, 32 Sup. Ct. Rep. 444; *Richardson* v. *Powers,* 11 Ariz. 31, 89 Pac. 542. If, however, the evidence is conflicting, so that on one conclusion as to the facts drawn therefrom probable cause exists, while from another it does not, it is then for the jury to determine the true state of facts and to apply the law as laid down by the court to those facts. *Ball* v. *Rawles, supra;* 38 C. J. 505. But, in order that the jurors may do this, it is obviously necessary that the court should instruct them specifically as to what state of facts will constitute probable cause, and what will not.

The instructions given in the present case fall far short of doing this. In substance, the court told the jurors that, if on the whole case they believed that the true facts were such as would cause a reasonable person to believe plaintiff was insane, probable cause existed; otherwise it did not. This left to the jury

the duty of determining *as a matter of law* what facts would, and what facts would not, constitute probable cause. This was error, and necessarily highly prejudicial. *Grant* v. *Moore,* 29 Cal. 644; *Eastin* v. *Bank of Stockton,* 66 Cal. 123, 56 Am. Rep. 77, 4 Pac. 1106; *Ball* v. *Rawles, supra.*

There are two methods whereby the court and jury can respectively discharge their proper functions in this respect. The first, and perhaps the surer, is by the court's submitting a special verdict to the jury and then applying the law to the facts so found. *De Lamater* v. *Little,* 32 Idaho 358, 182 Pac. 853; *Burton* v. *St. Paul etc. R. Co.,* 33 Minn. 189, 22 N. W. 300; *Helwig* v. *Beckner,* 149 Ind. 131, 46 N. E. 644, 48 N. E. 788; *Panton* v. *Williams,* 114 Eng. Reprint 66. The second, and probably the commoner, method is for the court, by means of a hypothetical instruction, to group the facts which the evidence tends to prove, and then instruct the jury that, if they find one set of facts to have been established, they should find that there is probable cause, while, if they find the other, they should find there is not. *Grant* v. *Moore, supra; Stewart* v. *Sonneborn, supra; Runo* v. *Williams,* 162 Cal. 444, 122 Pac. 1082; *Sweeney* v. *Perney,* 40 Kan. 102, 19 Pac. 328; 38 C. J. 513.

In view of the erroneous instruction which left the issue of probable cause to the jury as a matter of law, it is necessary that the case be reversed and remanded for another trial. We might conclude with this statement, but it appears to us that there are other assignments of error which should be disposed of in order that the trial court may be advised as to the proper principles to apply in such new trial.

The record shows that the acquaintanceship between plaintiff and defendant first arose over ten years ago, when plaintiff and defendant's father, W. J. Murphy, had business transactions involving

a certain irrigation project near Gila Bend. Defendant was bookkeeper or office manager for his father, and, under the latter's instructions, prepared and presented a statement of account of the transaction to plaintiff. Plaintiff was very much dissatisfied with this statement, although he finally accepted the amount which it showed to be due him. Some time after, according to his own admissions, he went into the office of defendant's father and engaged in an altercation over the matter with all of the inmates of the office, in which a revolver held by plaintiff played a prominent part. Then he went to the office of Henderson Stockton, one of counsel in this case, and while in such office made various threats, statements and gunplays, all arising out of his dissatisfaction with the settlement above referred to. In explaining these last transactions in the present trial, plaintiff gave as an excuse that he was worried, mentally sick and not himself, so that the whole matter was very hazy in his mind. He was arrested immediately after these transactions, pleaded guilty to two charges for assault with intent to commit murder, and was given a suspended sentence for a period of twenty years, on condition that he remain out of the state of Arizona.

Shortly before the inception of this action he returned to Arizona and called up defendant, stating that he wished to talk over the old controversy, together with other matters. Defendant declined to talk with him on any subject, and plaintiff, according to his own statement, made various remarks which he claims were intended innocently, but which, in view of the occurrences of ten years before, might well have been taken by a reasonable man to have a different meaning. Defendant then consulted his attorney, and, acting on the advice of the latter, filed a complaint against plaintiff, alleging him to be insane.

At the trial of this case, the court allowed plaintiff to go quite fully into the details of the transaction of ten years previous regarding the Gila Bend project as bearing on the question of malice. We think this was error, and, of course, it was prejudicial in a high degree, as causing the jury to confuse the merits of the settlement of ten years past with the issues of the present case. The utmost that was permissible was to show that there was a dispute in regard to the settlement, although, since it is not questioned that defendant's only connection therewith was as an employee of his father, and not as a participant, even that is stretching the rule to the limit in favor of plaintiff. But any of the details and merits of the transaction were certainly inadmissible upon any theory.

On the new trial, any evidence in regard to the Gila Bend transaction should be confined to the bare fact that there was a settlement of a business deal between plaintiff and defendant's employer, with which plaintiff was dissatisfied, and that the statement was prepared and delivered to plaintiff by defendant under the instructions of his employer.

Objection is also made to the remarks of plaintiff's counsel in his closing argument. While a great deal of liberty is allowed counsel in an argument to the jury, we are of the opinion that in this case the remarks went beyond the bounds permitted, and we trust on the new trial they will be confined to legitimate argument upon the evidence properly received.

We need not discuss the other assignments, as at a new trial the questions involved will probably not arise. The judgment of the superior court of Maricopa county is reversed and the case remanded for a new trial in accordance with the principles laid down in this opinion.

McALISTER, C. J., and ROSS, J., concur.