758 P.2d 1313

**Samuel L. BRADSHAW and Deborah A. Bradshaw, husband and wife, Plaintiffs–Appellees/Cross–Appellants,**

v.

**STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY, Defendant–Appellant/Cross–Apellee.**

**No. CV–87–0011–PR.**

Supreme Court of Arizona.

May 18, 1988.

Reconsideration Denied July 6, 1988.

---

412

Thur, Dawson & O'Sullivan by Steven C. Dawson, Calvin C. Thur, Scottsdale, for plaintiffs-appellees/cross-appellants.

O'Connor, Cavanagh, Anderson, West-over, Killingsworth & Beshears by Scott E. Boehm, Ralph E. Hunsaker, Larry L. Smith, Phoenix, for defendant-appellant/cross-appellee.

FELDMAN, Vice Chief Justice.

Petitioner asks us to review a decision of the court of appeals reversing the trial judgment in an unusual malicious prosecution case.[1] We granted review to examine important questions concerning the issue of probable cause. Rule 23, Ariz.R.Civ. App.P., 17A A.R.S. We have jurisdiction under Ariz. Const. art. 6, § 5(3) and A.R.S. § 12–120.24.

## FACTUAL AND PROCEDURAL SUMMARY

### A. The Underlying Action

Many of the essential facts in this case are undisputed. We view the other facts and all inferences in the light most favorable to sustaining the verdict. *Curlee v. Morris*, 72 Ariz. 125, 127, 231 P.2d 752, 753 (1951).

Shortly after 5:00 p.m. on January 27, 1980, Maricopa County Deputy Sheriff Samuel Bradshaw was rapidly driving east in his patrol car on University Drive in Mesa, Arizona. Because he was responding to another officer's distress call, Bradshaw had turned on his vehicle's siren and overhead flashing lights. As he neared the intersection of University Drive and 64th Street (the intersection), Bradshaw's radio dispatcher informed him that the emergency was supposedly over and he could now travel at posted speed limits without using his siren or lights.[2] Bradshaw acknowledged receipt of the dispatcher's signal.

William Ivie had been driving north toward the intersection. Ivie apparently did not halt at the intersection stop sign but drove directly into the path of Bradshaw's car, which had the right-of-way. Bradshaw swerved and braked, but still rammed broadside into Ivie's vehicle. Ivie neither braked nor made any evasive maneuver. Weather conditions were excellent; visibility was unobstructed.

The precise interval between Bradshaw's acknowledgment of the dispatcher's signal and the accident was not documented, but was probably quite short. The next transmission from Bradshaw's vehicle, about one and one-half minutes later, was from a citizen reporting the accident. Bradshaw suffered retrograde amnesia as a result of his injuries and had no recollection of the crash.

Accident experts estimated that Bradshaw's speed just prior to impact was from sixty-three to over seventy miles per hour. The posted speed limit for the area was forty-five miles per hour. The police interviewed seven people who had been witnesses to the accident.[3] All of the witness

---

**1.** The term "malicious prosecution" is used for this tort action because it was so described in the trial court and the opinion of the court of appeals. More properly, "malicious prosecution" is a term applied to the wrongful institution of criminal proceedings. *See* PROSSER AND KEETON ON THE LAW OF TORTS § 120, at 892 (5th ed. 1984). The proper term in a civil context is "wrongful use of civil proceedings." *See* Restatement (Second) of Torts ch. 30 (1977). While the distinction is sometimes purely academic, in this case the difference between the two actions may be important.

**2.** Bradshaw had been traveling under an emergency response condition known as Code 3. The radio dispatcher signalled the change in the requisite response to the distress call by giving a Code 4. The Code 4 signal indicates that the emergency is apparently over and the situation has stabilized. On the date of the accident, Bradshaw was the supervisor in direct charge of all county deputy sheriffs on patrol in eastern Maricopa County. Bradshaw was particularly concerned about reaching the scene of the officer's distress call because that officer was relatively inexperienced and his safety was Bradshaw's responsibility. Bradshaw testified that even if someone else decided that the situation was stable, he would have made an independent evaluation as to the necessary response.

**3.** Two of the witnesses had not actually seen the collision, but heard Bradshaw's siren suddenly cut off by the sound of the crash. Three witnesses reported seeing the accident and observed Bradshaw's emergency lights flashing until impact with Ivie. Those three, however, either said that they did not hear a siren or made no mention of a siren in their statements. Two witnesses stated that they both heard the siren and saw the flashing emergency lights throughout the events leading to the collision.

accounts were provided in the police report given to State Farm in early 1980. *Every* witness to the crash either heard Bradshaw's siren *or* saw his car's flashing emergency lights just before the crash. Two witnesses said that both emergency warning systems were in operation. The police report concluded that Ivie had improperly failed to yield the right of way. All witnesses to the incident agreed with that assessment.

The collision killed Ivie and inflicted severe injuries on Bradshaw. Soon after the accident, Bradshaw and his wife (the Bradshaws) retained an attorney who contacted Ivie's insurer, State Farm Mutual Automobile Insurance Company (State Farm). The Bradshaws also filed a perfunctory claim against Ivie's estate, apparently to preserve the right to sue the estate in case State Farm refused to settle for the limits of Ivie's liability policy. Over the next few months, State Farm claims personnel evidently concluded that their insured was liable for the accident. Reporter's Transcript (RT) Jan. 31, 1985, at 89–90, 116–17. They focused their attention on the extent of the damages, estimating the value of the Bradshaws' claim at from $65,000 to $75,000. The claims specialists were genuinely concerned that the damages might exceed the $100,000 policy limit. RT Jan. 31, 1985, at 55–56.

On October 8, 1980, the Bradshaws' attorney sent a detailed letter to State Farm, offering to settle for the $100,000 policy limits covering Ivie. The letter added that if settlement were not reached and the Bradshaws obtained a judgment in excess of the policy coverage, they would pursue State Farm directly for the excess because "Mr. Ivie's estate has indicated a willingness to assign that action to us should litigation be necessary." The attorney gave State Farm fourteen days to consider this settlement offer. On October 14, 1980, the Bradshaws granted State Farm an additional thirty days to consider the proposal. But rather than negotiate further with the Bradshaws, State Farm decided to persuade Mrs. Ivie, an Iowa resident, to sue the Bradshaws in federal court. There was evidence that State Farm's decision to sue

was unrelated to the true merits of Ivie's claim. RT Jan. 30, 1985, at 142–43; Jan. 31, 1985, at 14, 27, 37–38.

A State Farm claims adjuster asked Ivie's probate attorney for permission to bring a wrongful death action against the Bradshaws in Mrs. Ivie's name. Mrs. Ivie's attorney apparently did not give consent and requested that the Bradshaws' claim be settled. State Farm renewed its request, and in an October 22, 1980 letter, Ivie's probate attorney responded to State Farm's offer:

> I explained to Mrs. Ivie that you desired to commence action in her name against Bradshaws ... and wished her permission to do so; that such would be of no expenses whatsoever and of any kind to her; that if a recovery was made on her behalf or the estate, that you would deduct therefrom only the court costs, but nothing else, nor would she be required to pay legal fees. Mrs. Ivie has consented to the above and you may proceed. *She stated that this does not in any way modify her request that the case be settled within the limits of [her] insurance policy,* as was stated and mentioned in my letter of October 13th, 1980.

(Emphasis added.)

State Farm filed a complaint against the Bradshaws in Arizona federal district court on November 3, 1980. The Bradshaws answered and counterclaimed for the injuries inflicted by Mr. Ivie. While the complaint was technically brought in the name of Mrs. Ivie and the estate of Mr. Ivie, State Farm had complete control of the litigation and paid all costs, fees and expenses. The parties conducted over twenty-five depositions preparing for trial. By the summer of 1982, the Bradshaws' "difficult financial situation" and emotional upset over being sued and accused of negligently causing Mr. Ivie's death forced them to accept a settlement of $60,000 from State Farm. The parties signed a stipulation and order for dismissal with prejudice, which was granted by the district court on July 22, 1982. Mrs. Ivie had died by the time of the settlement.

### B. This Action

On June 30, 1983, the Bradshaws brought this action against State Farm alleging malicious prosecution, abuse of process, intentional infliction of emotional distress, unfair or deceptive insurance acts or practices, and racketeering. State Farm answered and obtained dismissal of the last three counts. The case went to trial on malicious prosecution and abuse of process theories. At the conclusion of the evidence, the trial court granted State Farm's motion for a directed verdict on abuse of process but sent the malicious prosecution count to the jury.

The jury awarded the Bradshaws $40,-000 [4] in compensatory damages and assessed $2,000,000 in punitive damages. State Farm filed motions for a new trial and for judgment notwithstanding the verdict. The trial court ordered a new trial unless the Bradshaws accepted a remittitur of $1,000,000. They accepted the remittitur on May 16, 1985, and the judgment became final.

State Farm appealed, raising the question of probable cause and a number of other substantive, evidentiary and damage issues.[5] The Bradshaws cross-appealed claiming the trial court erred in directing a verdict for State Farm on the abuse of process count and in calculating the remittitur.

### C. Opinion of the Court of Appeals

The court of appeals focused on State Farm's contention that the Bradshaws' malicious prosecution count should have been dismissed because there was probable cause for Mrs. Ivie's wrongful death lawsuit. The court correctly noted that in order to prove malicious prosecution, a plaintiff must prove that the underlying action was brought without probable cause. *Bradshaw v. State Farm Mutual Automobile Insurance Co.*, 157 Ariz. 410, 411, 758 P.2d 1312, 1313 (Ct.App.1986). Because the existence of probable cause is a matter of law, the court of appeals concluded that it need not defer to the trial court's findings. 157 Ariz. at 411, 758 P.2d at 1313, citing *Bird v. Rothman*, 128 Ariz. 599, 627 P.2d 1097 (App.), *cert. denied*, 454 U.S. 865, 102 S.Ct. 327, 70 L.Ed.2d 166 (1981). The court of appeals noted that two witnesses to the crash said that Bradshaw did not have his siren on at the time of impact. Because Ivie's death claim could therefore have survived a motion for summary judgment, the court believed that as a matter of law there had been probable cause for the institution of the death action. 157 Ariz. at 411, 758 P.2d at 1313. The court of appeals therefore reversed the judgment. We granted the Bradshaws' petition for review.

In essence, the Bradshaws have presented four issues [6] we must consider. State Farm raised six additional issues not decided by the court of appeals that merit our attention. Because they go to the heart of this case, we turn first to the issues relating to the malicious prosecution elements.

## MALICIOUS PROSECUTION ISSUES

■ There are five elements to a claim for wrongful prosecution of a civil action.

---

4. These damages apparently represent the difference between the $60,000 settlement the Bradshaws accepted and the $100,000 limit of the State Farm policy that the jury evidently found the Bradshaws would have obtained had they not been "coerced" by State Farm's conduct.

5. The only issue actually decided by the court of appeals was the probable cause question. State Farm's other contentions before the court of appeals were raised again in this court. *See infra.* State Farm did not actually file a cross-petition, but reasserted the issues in its Response to Petition for Review. Our rules are ambiguous on the question of whether points properly and timely raised on appeal, but unre- solved because unnecessary to the dispositional grounds selected by the court of appeals, need be brought to this court's attention by separate recital in either the response to the petition for review or by cross-petition. *See* Rule 23(e), Ariz.R.Civ.App.P., 17A A.R.S. Because that ambiguity is still unresolved, we deem State Farm's additional issues properly raised in this court and will consider them in the resolution of this case.

6. Because of our disposition of the enumerated issues, we need not address the Bradshaws' argument that the trial court erred in dismissing the abuse of process count. Our failure to discuss the issue does not indicate our approval of the trial court's ruling.

Plaintiff must prove defendant (1) instituted a civil action which was (2) motivated by malice, (3) begun without probable cause, (4) terminated in plaintiff's favor and (5) damaged plaintiff. *Carroll v. Kalar*, 112 Ariz. 595, 596, 545 P.2d 411, 412 (1976).

State Farm concedes that as the instigator of the lawsuit, it can be held liable as an initiator, even though the action was filed in Mrs. Ivie's name. *See* PROSSER AND KEETON ON THE LAW OF TORTS § 120, at 893 (5th ed. 1984) (hereafter "PROSSER & KEETON."). There was evidence of damage. On the damage issue, the Bradshaws claim they were upset and intimidated by the lawsuit accusing them of legal responsibility for Ivie's death. Allegedly worn down by the stress and delays of the wrongful death case, the Bradshaws ultimately insisted that their attorney settle for $40,000 less than the State Farm policy limits. Assuming, as we must, that the jury accepted the Bradshaws' evidence on damages, we need consider only elements two, three and four. We commence with probable cause, the main issue.

**A. Probable Cause**

We disagree with the court of appeals' holding that probable cause exists as a matter of law merely because at the time an action is filed there is some evidence that will withstand a motion for summary judgment. Such a rule, we believe, would be unwise because it would permit people to file actions they believed or even knew to be unfounded simply because they could produce a scintilla of evidence sufficient to withstand a motion for summary judgment. The law has never recognized this as the test for malicious prosecution.[7] *See* PROSSER & KEETON, *supra* § 120, at 893; Restatement (Second) of Torts § 675 (1977) (hereafter "Restatement"). The proper test is subjective *and* objective. *Williams v. Coombs*, 179 Cal.App.3d 626, 634, 224 Cal.Rptr. 865, 871 (1986) (physician brought malicious prosecution action against attorney who sued him for medical malpractice).

The initiator of the action must honestly *believe* in its possible merits; and, in light of the facts, that *belief must be objectively reasonable*. *Haswell v. Liberty Mutual Insurance Co.*, 557 S.W.2d 628, 633 (Mo. 1977). *See also* Restatement § 675 comment c; PROSSER & KEETON, *supra* § 120, at 893.

The test for wrongful institution of judicial proceedings in true cases of malicious prosecution (those involving wrongful initiation of criminal proceedings) differs from cases involving wrongful initiation of civil proceedings. *See* note 1, *supra*. In the former type of case, probable cause exists *only* if the prosecutor actually believes that the accused was guilty of the crime. If he does not, "it is immaterial that the facts ... were such that reasonable men might have regarded them as proof of the guilt of the accused." Restatement § 662 comment c. In the case of wrongful institution of civil proceedings, on the other hand, the subjective standard is less stringent.

[W]hen the proceedings are civil, while the person initiating them cannot have a reasonable belief in the existence of the facts on which the proceedings are based if he knows that the alleged facts are not true and his claim is based on false testimony, it is enough if their existence is not certain but he believes that he can establish their existence to the satisfaction of court and jury.

Restatement § 675 comment d. In the civil cases, therefore, the test is whether the initiator "reasonably believes that he has a good chance of establishing [his case] to the satisfaction of the court or the jury." PROSSER & KEETON § 120, at 893.

In using a summary judgment standard, the court of appeals ignored the subjective component of the malicious prosecution test. Even if the facts would withstand a motion for summary judgment, the initiator of a lawsuit could still be liable for malicious prosecution if he did not have the requisite belief in his claim. Thus, the

---

7. Nor should it adopt such a test under Rule 11, Ariz.R.Civ.P., 16 A.R.S., which forbids lawyers from filing unfounded cases. *See Boone v. Su-* *perior Court*, 145 Ariz. 235, 700 P.2d 1335 (1985).

relevant questions are whether, at the time it filed the wrongful death action, State Farm believed a jury might find its case meritorious *and* whether that belief was reasonable. State Farm did not have to be certain it would prevail; rather, it only had to reasonably believe in the possibility that the court would find its claim valid. *See* Restatement §§ 674 comments e and f, and 675 comment c. The initiator may realize that the fight will be difficult and the battle uphill, but so long as it honestly believes it may establish its case, it satisfies the subjective portion of the probable cause test. *See* Restatement § 675 comments c and f.

■ The facts of this case do not permit a court to rule as a matter of law that State Farm passed even the subjective part of the test. The evidence showed that Ivie was overwhelmingly at fault for the accident. He pulled directly into Bradshaw's path and apparently never even saw the police car. Every witness blamed Ivie for the crash. The police report concluded that Ivie alone was at fault. Of course, these facts were not binding on State Farm. However, the conclusions State Farm's own investigators reached were just as damaging. The claims supervisor handling the case concluded that Bradshaw had been driving with the flashing lights and siren operating up to or even at the time of the collision. It was *his* conclusion that Ivie was liable. When State Farm's claims committee reviewed the file, it also decided that Ivie was liable and that the case should be settled. The claims committee and the claims supervisor had only one doubt—whether the case was worth the $100,000 policy limits or should be settled instead for something in the area of $65,-000 to $75,000.[8] RT Jan. 30, 1985, at 159–61, 163, 171–73; Jan. 31, 1985, at 13, 18.

8. In prosecuting the death case, State Farm spent over $15,000. Thus, State Farm's total cost on the claim was about $75,000, approximately the same figure at which the State Farm adjusters evaluated the claim in 1980. Also, of course, State Farm had use of the funds for two years.

9. The trial court expressed strong reservations on the existence of probable cause:

In addition, there was direct evidence disclosing the true reason that State Farm filed the lawsuit. The idea seems to have emanated from its claims superintendent, Fred Hodek. His articulated purpose in suing the Bradshaws was not to prevail on a claim he believed might prove meritorious but to enable State Farm to get subpoena power and as a "good defensive move." RT Jan. 30, 1985, at 170–71; Feb. 4, 1985, at 43, 47, 55, 61–62.

Given all these circumstances, we cannot agree with the court of appeals that State Farm had probable cause as a matter of law. If anything, as a matter of law State Farm might have lacked probable cause. This, at least, was the stated opinion of the trial judge.[9] In any event, the evidence permitted an inference that the wrongful death case was filed, not because State Farm believed it might be found meritorious, but in order to intimidate the Bradshaws and coerce them into settling their claim for less than policy limits. Thus, there was evidence that the case was initiated by State Farm without the necessary subjective belief in its merits. From the foregoing analysis, we conclude that the court of appeals incorrectly held that probable cause existed as a matter of law. The conflicting evidence required the question to be submitted to the jury.

### B. Malice

■ The malice element in a civil malicious prosecution action does not require proof of intent to injure. Restatement § 676 comment c. Instead, a plaintiff must prove that the initiator of the action primarily used the action for a purpose "other than that of securing the proper adjudication of the claim." *See* Restatement § 676; *see also Hammond Lead Products v.*

I think as a matter of law I could rule there was not probable cause for the Ivies to bring the lawsuit. Was wishful thinking at best under the evidence in my opinion.

RT Feb. 4, 1985, at 92. The trial court later added:

Just couldn't possibly constitute probable cause. I just don't see it.

*Id.* at 93.

*American Cyanamid Co.*, 570 F.2d 668, 672–73 (7th Cir.1977) (company wrongfully used civil proceedings when it sued a competitor solely for harassment). On this issue, also, the Bradshaws' proof was sufficient to go to the jury. There was evidence indicating that Hodek instigated the lawsuit as a "defensive measure," thus permitting the inference that he wished to wear the Bradshaws down and force them to settle the injury claim for a lesser sum. This may be a "good defensive move," as Hodek said, but it is not a legitimate use of civil process. A civil action is wrongfully initiated when it is filed as a "nuisance action" to force a settlement upon an unwilling opponent. Restatement § 676 comment c, at 463. Likewise, it is improper to file a counterclaim merely for the purpose of "delaying expeditious treatment of the original cause of action" rather than to obtain proper adjudication of the merits asserted in the counterclaim. *Id.* We believe the jury properly could have applied both of those principles to the facts of this case.

## C. Favorable Termination

■ The wrongful death case was concluded by settlement, rather than judgment. Ivie's complaint and the Bradshaws' counterclaim were dismissed with prejudice. Notwithstanding dismissal of the action, settlement may be a favorable termination. *See Frey v. Stoneman*, 150 Ariz. 106, 110–11, 722 P.2d 274, 278–79 (1986). The true facts, not the form of disposition, are determinative. *Id.* In this case, State Farm withdrew Ivie's action, paid the Bradshaws $60,000 and stipulated to the dismissal of the wrongful death complaint with prejudice. Under these facts, the jury could conclude that Ivie's lawsuit was terminated favorably to the Bradshaws. *Id.;* *see also* Restatement § 674 comment j (favorable termination may arise from "the withdrawal of the proceedings by the person bringing them").

## D. The Probable Cause Instruction

Whether the facts in a specific case amount to probable cause is a question of law. *McClinton v. Rice*, 76 Ariz. 358, 367,

265 P.2d 425, 431 (1953). If the operative facts are undisputed, the existence of probable cause is a question of law to be determined solely by the court. If the facts are disputed, the court may instruct the jury hypothetically, telling them what facts will constitute probable cause. *McDonald v. Atlantic & Pacific Railroad*, 3 Ariz. 96, 98, 21 P. 338 (1889). The court may use either a special verdict form or a hypothetical instruction to provide adequate guidance to the jury. *See Hockett v. City of Tucson*, 139 Ariz. 317, 320, 678 P.2d 502, 505 (App.1983). *See also* Restatement § 681(B)(2).

■ In the present case, the trial court did not give the jury adequate instructions on this issue. Basically the court told the jury that it should use a reasonable person test to determine whether State Farm had probable cause to institute or continue the lawsuit. This instruction was remarkably similar to the jury charge specifically disapproved in *Murphy v. Russell*, 40 Ariz. 109, 111–13, 9 P.2d 1020, 1021–22 (1932). Like the *Murphy* instruction, it failed to give proper guidance for the resolution of the factual issues relating to probable cause.

■ We find, however, that this error was waived. The Bradshaws asked the trial court to find probable cause was lacking and withhold that issue from the jury. The court refused and left the issue to the jury on the "reasonable person" test. State Farm incorrectly argued that the court should find as a matter of law that probable cause existed and direct a verdict, but *did not object* to the final form of the probable cause instructions actually given to the jury. Moreover, State Farm did not offer the trial court any acceptable jury instructions covering hypothetical findings.

Rule 51(a), Ariz.R.Civ.P., 16 A.R.S. states in pertinent part:

No party may assign as error the giving or the failure to give an instruction unless that party objects thereto before the jury retires to consider its verdict, stating distinctly the matter objected to and the grounds of the objection.

Because State Farm did not object to the probable cause instruction, it has waived the issue, unless giving the instruction constituted fundamental error. *See, e.g., Tryon v. Naegle,* 20 Ariz.App. 138, 142, 510 P.2d 768, 772 (1973).

The doctrine of fundamental error is sparingly applied in civil cases and may be limited to situations where the instruction deprives a party of a constitutional right. *See, e.g., Trojanovich v. Marshall,* 95 Ariz. 145, 146, 388 P.2d 149, 150 (1963). In the present case, while the instruction failed to apply law to fact, it did give the jury the basic legal outline of the objective portion of the legal test. The instruction was favorable to State Farm insofar as it deleted the subjective portion of the legal test. In holding State Farm liable, the jury necessarily found that there were no objectively reasonable grounds for the wrongful death suit when it was filed. Under these facts, the instructional mistake did not deprive State Farm of a fair opportunity to conduct its defense. There was no fundamental error.

The probable cause issues did not warrant reversal of the verdict. We turn, then, to the other issues.

## EVIDENTIARY AND OTHER ISSUES AFFECTING THE VALIDITY OF THE MALICIOUS PROSECUTION JUDGMENT

A. Testimony on Settlement Negotiations

At the malicious prosecution trial, the court allowed the attorney who had represented the Bradshaws in the accident litigation to testify concerning several conversations with a State Farm adjuster. In these talks, which occurred before State Farm brought the Ivie case against the Bradshaws, State Farm arguably recognized that its insured was indeed liable for Bradshaw's injuries. The settlement discussions focused on the amount of Bradshaw's medical expenses, with Ivie's liability for the accident treated by State Farm as an established fact.

Relying on Rule 408, Ariz.R.Evid., 17A A.R.S. (hereafter "Rule"), State Farm asserts that the trial court erred in allowing this testimony of settlement discussions in the accident case to be admitted in the malicious prosecution action. The rule reads as follows:

Evidence of (1) furnishing or offering or promising to furnish, or (2) accepting or offering or promising to accept, a valuable consideration in compromising or attempting to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount. Evidence of conduct or statements made in compromise negotiations is likewise not admissible. This rule does not require the exclusion of any evidence otherwise discoverable merely because it is presented in the course of compromise negotiations. This rule also does not require exclusion when the evidence is offered for another purpose, such as proving bias or prejudice or a witness, negativing a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

By its terms, the rule does not bar the use of such evidence when offered for a relevant purpose other than proving the validity of the claim or its amount. *See Barsema v. Susong,* 156 Ariz. 309, 751 P.2d 969 (1988); *Readenour v. Marion Power Shovel,* 149 Ariz. 442, 719 P.2d 1058 (1986).

In the case before us, the evidence did not relate to compromise negotiations of the case being tried and, therefore, was not offered as State Farm's admission of liability for malicious prosecution. The negotiations in the accident case were offered as evidence of State Farm's knowledge and state of mind with respect to the merits of the wrongful death action filed against the Bradshaws. This was, in turn, related to the determination of probable cause, the main issue in the Bradshaws' malicious prosecution case against State Farm. From the evidence of the accident case negotiations, the jury in the malicious prosecution case could have inferred that before filing the wrongful death action against the Bradshaws, State Farm in fact

believed that its insured was liable. There was no error.

## B. Reimbursement for Property Damage

 State Farm argues that the trial court abused its discretion by admitting evidence that State Farm had paid Maricopa County for loss of the demolished patrol car. This evidence, too, was offered on the probable cause issue. At trial, State Farm's only objection was that the evidence was immaterial. The trial court did not err in overruling that objection. Such general objections are insufficient to preserve a claim of error. M. UDALL & J. LIVERMORE, ARIZONA PRACTICE: THE LAW OF EVIDENCE § 12 (2d ed. 1982). Further, State Farm's payment for the value of the vehicle was relevant to its belief about whether its insured was responsible for the accident.

## C. Assignment of the Lawsuit

 State Farm complains that the trial court erred in allowing the Bradshaws to suggest to the jury that State Farm had improperly and illegally obtained an assignment of the wrongful death claim from Mrs. Ivie. State Farm did admit in court that it was the real plaintiff in the accident case, that it paid the lawyers in that case, covered all expenses and directed the litigation. State Farm also admitted that it alone decided to sue the Bradshaws and solicited permission to do so from Mrs. Ivie. When the Bradshaws were unable to produce an actual written assignment from Mrs. Ivie, the trial court refused to instruct the jury on the impropriety of a wrongful death claim assignment. State Farm, for its part, neither moved to strike remarks of the Bradshaws' counsel nor asked the trial court to instruct the jury to disregard any inference of wrongdoing concerning the alleged assignment. *See Readenour,* 149 Ariz. at 450–52, 719 P.2d at 1066–68 (review of procedures to secure limiting instruction). State Farm has therefore waived any objection.

## D. Failure to Instruct on Duties of Emergency Vehicle Driver

 State Farm claims that the trial court improperly failed to instruct the jury on A.R.S. § 28–624, which details the rights and duties of an emergency vehicle driver. This statute does express legal principles relevant to the wrongful death claim, but does not embody any principle directly governing the malicious prosecution theory. At most, the rules expressed in the statute were evidentiary matters in the malicious prosecution case, marginally relevant to State Farm's basis for bringing the death case. Thus, here, as in all other evidence questions, the trial court had considerable discretion on admissibility. Rule 103; *Selby v. Savard,* 134 Ariz. 222, 227, 655 P.2d 342, 347 (1982).

The trial court concluded that the requested recitation of this lengthy statute would merely confuse the jury. *See* Rules 401 and 403. The focal point of the malicious prosecution case was probable cause. There was no evidence that State Farm had actually relied on any supposed violation of A.R.S. § 28–624 to justify its initial decision to sue the Bradshaws for Ivie's death. Under these circumstances, we defer to the trial court's discretion in excluding this potentially confusing, marginally relevant evidence. Rule 403.

## PUNITIVE DAMAGES ISSUES

### A. Sufficiency of Evidence

State Farm contends that the trial judge erred in submitting the issue of punitive damages to the jury. In a series of recent cases, this court has considered the standards controlling awards of punitive damages. *See Volz v. Coleman Co.,* 155 Ariz. 567, 748 P.2d 1191 (1987); *Gurule v. Illinois Mutual Life & Casualty Co.,* 152 Ariz. 600, 734 P.2d 85 (1987); *Filasky v. Preferred Risk Mutual Insurance Co.,* 152 Ariz. 591, 734 P.2d 76 (1987); *Hawkins v. Allstate Insurance Co.,* 152 Ariz. 490, 733 P.2d 1073, *cert. denied,* —— U.S. ——, 108 S.Ct. 212, 98 L.Ed.2d 177; (1987); *Rawlings v. Apodaca,* 151 Ariz. 149, 726 P.2d 565 (1986); *Linthicum v. Nationwide Life Insurance Co.,* 150 Ariz. 326, 723 P.2d 675 (1986). "Something more" is usually required to justify the recovery of punitive

damages, even in such torts as insurance bad faith. *Rawlings,* 151 Ariz. at 161, 726 P.2d at 577.

■ We believe the *Rawlings* principle applies to malicious prosecution actions. In malicious prosecution, as in bad faith, the tort is based upon the actor's grounds or lack of grounds. *See, e.g., Sparks v. Republic National Life Insurance Co.,* 132 Ariz. 529, 537–39, 647 P.2d 1127, 1135–37 (bad faith consists of denying claim without reasonable grounds), *cert. denied,* 459 U.S. 1070, 103 S.Ct. 490, 74 L.Ed.2d 632 (1982). In both actions, the heart of the tort is acting without probable cause. On the issue of punitive damages, however, the defendant's motives are determinative. *Rawlings, supra.*

Even in a successful malicious prosecution action, the reprehensibility of defendant's state of mind may vary. For instance, the initiator of the underlying action may have had a subjective belief in the validity of his claim, but lacked objectively reasonable grounds for that belief. Further, the "malice" required for malicious prosecution is not necessarily an intent to injure but merely an intent outside the legitimate objectives of civil action. *See* Restatement § 676.

Thus, in malicious prosecution, as in bad faith, proof of the tort does not automatically justify an award of punitive damages. As in other tort cases, something more is required. *Volz,* 155 Ariz. at 570, 748 P.2d at 1194. Here, again, we believe that the "something more" can best be characterized as defendant's "evil mind." *Rawlings,* 151 Ariz. at 162, 726 P.2d at 578. In the punitive damages-bad faith cases referred to above, this court has described the required states of mind. The standards are discussed in Schmidt, *Punitive Damages in Arizona: The Reports of Their Death Are Greatly Exaggerated,* 29 ARIZ.L. REV. 599, 601–02 (1987). They include:

1. Facts showing that defendant intended to cause injury, *Hawkins,* 152 Ariz. at 497, 733 P.2d at 1080;

2. Facts demonstrating that defendant's wrongful conduct was motivated by spite or ill will, *Linthicum,* 150 Ariz. at 330–31, 723 P.2d at 679–80;

3. Facts from which the jury can conclude that even though defendant had neither desire nor motive to injure (*i.e.,* neither intent nor spite), he acted to serve his own interests, having reason to know and consciously disregarding a substantial risk that his conduct might significantly injure the rights of others. *Gurule,* 152 Ariz. at 602, 734 P.2d at 87; *Rawlings,* 151 Ariz. at 162–63, 726 P.2d at 578–79; *Linthicum,* 150 Ariz. at 330–31, 723 P.2d at 679–80. Punitive damages may be assessed even though the injury to the individual plaintiff was "relatively small and innocuous," so long as the cumulative harm suffered by all victims, plaintiffs and non-plaintiffs, is significant, large or "tremendous." *Volz,* 155 Ariz. at 570, 748 P.2d at 1194; *Hawkins,* 152 Ariz. at 502, 733 P.2d at 1085; Schmidt, *supra,* 29 ARIZ.L.REV. at 601 n. 18, 609. Of course, the existence of factors constituting an "evil mind" can be inferred from the evidence, including proof that defendant's conduct was outrageous in nature. *Volz,* 155 Ariz. at 570, 748 P.2d at 1194.

■ Setting aside its motives and viewing its actions in isolation, State Farm's conduct in initiating and prosecuting the wrongful death action did not in itself establish spite, malice or ill will toward the Bradshaws. Nor was there evidence that State Farm intended to harm the Bradshaws or had spite, malice or ill will toward the Bradshaws. Under the facts of this case, however, a jury could easily find that State Farm's conduct was guided by the "evil mind" described in *Rawlings.* There was evidence that State Farm acted intentionally, without subjective belief in the merits of the lawsuit it instituted, and that it was aware its action was unfounded and untenable. The evidence thus would support the ultimate inference that State Farm sought its own legitimate objective—settlement for as little as possible—by improper means, knowingly harassing and coercing the Bradshaws through filing an unjustified lawsuit. Thus, the jury could have concluded that State Farm knowingly acted

improperly to serve its own interests and consciously disregarded a "substantial risk of significant harm to others." *Schmidt, supra*, 29 ARIZ.L.REV. at 600. The evidence was sufficient to support an award of punitive damages. *See Rawlings*, 151 Ariz. at 161–63, 726 P.2d at 577–79.

### B. Instructions on Punitive Damages

State Farm argues that the jury was improperly instructed on the punitive damages issue. It is correct. The trial court's instruction on punitive damages followed its instruction on compensatory damages. Having instructed on compensatory damages, including damages for "anxiety, worry, fear, mental distress or humiliation," the court informed the jury that "if you find that defendant has been guilty of malicious prosecution of a legal action as that term has been defined to you then you may ... assess ... punitive or exemplary damages...." This wording improperly instructed the jury that it might award punitive damages without the Bradshaws' proving "something more" egregious than mere commission of the tort.

■ Had counsel for State Farm timely objected to this instruction at trial, we would reverse the punitive damage award. So far as we can ascertain from the record, however, State Farm did not object to the wording of the instruction. State Farm also failed to submit its own instruction on the subject. It only objected that the evidence was insufficient to prove malice and lack of probable cause as elements of malicious prosecution, and that it was therefore error to allow the entire malicious prosecution issue to go to the jury. This, of course, falls far short of informing the trial judge of the error, if any, in the method of submitting the punitive damage issue. The issue was therefore waived. *See* Rule 51(a), Ariz.R.Civ.P., 16 A.R.S.; *Montano v. Scottsdale Baptist Hospital*, 119 Ariz. 448, 453–54, 581 P.2d 682, 687–88 (1978).

■ Our recent cases have also held that the burden of proof on the punitive damages issue is clear and convincing evidence. *Linthicum*, 150 Ariz. at 332, 723 P.2d at 681. Again, the trial judge's in-

structions on this issue did not conform to the present law. However, we have held that this standard of proof is not retroactive. *See Hawkins*, 152 Ariz. at 503–05, 733 P.2d at 1086–88. Furthermore, State Farm failed to make any objection or submit any instruction.

We conclude that there was no reversible error in submission of the punitive damage issue or in the jury instructions given on this issue.

### C. The Amount of Punitive Damages

The Bradshaws argue that the jury award of $2,000,000 in punitive damages was entirely proper and that the trial judge erred in remitting the damages to $1,000,000. State Farm argues, on the other hand, that the original award was grossly improper and that the trial judge erred in remitting it by only fifty percent.

■ The evidence on the subject indicated that State Farm's recent net annual earnings were almost $700,000,000, so that the original amount of $2,000,000 was approximately one day's net income and the remitted amount of $1,000,000 was about one-half day's income for State Farm. In addition, the evidence showed that among its assets, State Farm had "unassigned" cash of almost five billion dollars. The remitted amount of punitive damages is equal to approximately one twenty-fifth of one percent of State Farm's unassigned cash funds. The facts in evidence support the trial judge's finding that the amount of the verdict does not demonstrate undue prejudice or passion. *See Flieger v. Reeb*, 120 Ariz. 31, 35, 583 P.2d 1351, 1355 (App. 1978). *Cf. Hawkins*, 152 Ariz. at 505–07, 733 P.2d at 1088–90 (Holohan, J., dissenting) (suggesting due process might place limits on punitive damages in certain cases). In our view, the evidence would have sustained the trial judge had he not remitted the punitive damages. State Farm's claim that the judge erred in failing to reduce it by more than fifty percent is meritless.

The Bradshaws claim, on the other hand, that the trial court erred in remitting the punitive damages and ask us to reinstate

the full amount of the verdict. We refuse to do so. It is one thing to say that the trial judge could have left the verdict undisturbed and another to say that it was error to disturb it. The amount of any verdict that quantifies an intangible type of damage award is within the discretion of the trial judge. *See* Rule 59(a)(5), Ariz.R. Civ.P., 16 A.R.S. This is especially true of punitive damage awards. *See Carter–Glogau Laboratories v. Construction, Production & Maintenance Laborers' Local 383,* 153 Ariz. 351, 358, 736 P.2d 1163, 1170 (App.1986). The trial judge could certainly have concluded that one million dollars was ample to serve the objectives of a punitive damage award—punishing the wrongdoer and deterring others from similar conduct. *Cassel v. Schacht,* 140 Ariz. 495, 496, 683 P.2d 294, 295 (1984). It was not an abuse of discretion in this case to order a remittitur of one million dollars.

### CONCLUSION

Having reviewed each of the contentions raised by the parties, we find no reversible error in the trial court proceedings. We affirm the trial court's judgment and vacate the court of appeals' opinion.

GORDON, C.J., and CAMERON and BROOKS, JJ., concur.

HOLOHAN and MOELLER, JJ., did not participate in the determination of this matter. Pursuant to Ariz. Const. art. 6, § 3, BROOKS and JACOBSON, Court of Appeals Judges, Division One, were designated to sit in their stead.

JACOBSON, Court of Appeals Judge, specially concurring:

I concur in the disposition of the punitive damages issue solely on the basis that my review of the record shows that no objection was made to the submission of .punitive damages to the jury. Thus, the issue of whether the evidence supports the submission to the jury of punitive damages was waived.