IN THE COURT OF APPEALS
STATE OF ARIZONA
DIVISION TWO

| | | |
|---|---|---|
| THE STATE OF ARIZONA, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | 2 CA-SA 2013-0025 |
| | ) | DEPARTMENT B |
| HON. RICHARD S. FIELDS, Judge of | ) | |
| the Superior Court of the State of Arizona, | ) | O P I N I O N |
| in and for the County of Pima, | ) | |
| | ) | |
| Respondent, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| JUSTIN JAMES CHASE, | ) | |
| | ) | |
| Real Party in Interest. | ) | |
| | ) | |

SPECIAL ACTION PROCEEDING

Pima County Cause No. CR20124003001

JURISDICTION ACCEPTED; RELIEF GRANTED

Barbara LaWall, Pima County Attorney
  By Nicolette Kneup                                                     Tucson
                                              Attorneys for Petitioner


Lori J. Lefferts, Pima County Public Defender
  By David J. Euchner                                                   Tucson
                                        Attorneys for Real Party in Interest


V Á S Q U E Z, Presiding Judge.

¶1        In this special action, petitioner State of Arizona challenges the respondent judge's ruling remanding the criminal action against Justin Chase to the grand jury and ordering that it be instructed on two possible "interpretations" of the Arizona Medical Marijuana Act (AMMA), A.R.S. §§ 36-2801 through 36-2819.  We accept jurisdiction of this special action, and, for the reasons stated below, grant relief.

**Background and Jurisdiction**

¶2        In October 2012, a Tucson police officer saw an advertisement for marijuana posted on the website Craigslist.com.  The title of the advertisement included the name of a variety of marijuana and "$10," and, in the text, Chase stated he had "extra medical marijuana for legal card holders."  The officer arranged to meet Chase in a grocery store parking lot, and Chase sold the officer six grams of marijuana "for $60 cash."  Chase was arrested, and officers went to his residence and found marijuana plants, "two mason jars containing marijuana," and "three digital scales."

¶3        The state presented the matter to the grand jury, which had been instructed previously on the AMMA.  In connection with the proposed indictment against Chase, a Tucson police detective testified as to the facts above, stating officers had found eighteen marijuana plants with an approximate weight of four pounds.  He testified, "Chase has a medical marijuana card; however, the number of plants he has exceeds the amount that he's allowed to grow."  The detective later stated he "believe[d] that the 18 plants [Chase] had were possessed for sale based on what the officers found with him [when he was] actually selling the marijuana."  The grand jury returned an indictment for

2

possession of marijuana for sale in an amount of four pounds or more, production of marijuana having a weight of four pounds or more, and possession of drug paraphernalia.

¶4 Chase filed a motion to dismiss the indictment or to remand the matter to the grand jury to redetermine probable cause. In the motion, he maintained the state had omitted "clearly exculpatory information," the grand jurors had not been properly instructed on the AMMA, and the detective's testimony had misled the jurors about the number of plants for sale and had included "prejudicial opinion." The state agreed the matter should be remanded to the grand jury in order to "clarify the weight of the marijuana that was recovered from [Chase's] home." Although the detective had testified before the grand jury that eighteen plants were found at the home and the incident report also listed eighteen plants, the evidence sheet listed only eleven plants, and photographs taken at the home showed fewer than eighteen. Likewise, although the detective testified the plants had a weight of four pounds, the incident report listed them as weighing three pounds.

¶5 At the hearing on the motion, Chase argued the state could not charge him with possessing for sale all of the plants found in his home because his medical-marijuana "license" had not been "suspended," and it was therefore only the "amount in excess of" twelve plants that "should be considered for sale." The state countered that, once Chase was "found to not be using marijuana in accordance with the [AMMA]," he was not entitled to its protections. The court accepted the state's position, set a date for a viewing of the evidence, and granted Chase's motion to remand to the grand jury upon completion of the viewing. But the court stated that because its ruling was not

3

"precedent" and "there is no clear law," the grand jury should "be instructed both ways, and they make the decision." The state then brought this special action, asking that we "correct the trial court's order with regard to instructing the grand jury on multiple theories of the law and requiring them to decide which applies" and "clarify the law by declaring that . . . the presumption of legality under the [AMMA is] entirely rebuttable."

**¶6** We accept jurisdiction of this special action because, as the state correctly asserts, it has "'no other means of obtaining'" review of the issues it raises. *State v. Leonardo*, 226 Ariz. 593, ¶ 4, 250 P.3d 1222, 1223 (App. 2011), *quoting State ex rel. Romley v. Hutt*, 195 Ariz. 256, ¶ 5, 987 P.2d 218, 221 (App. 1999); *see State v. Miller*, 226 Ariz. 202, ¶¶ 1-2, 245 P.3d 887, 889 (App. 2010); *see also* Ariz. R. P. Spec. Actions 1(a) (special action review not proper when petitioner has "equally plain, speedy, and adequate remedy by appeal"). The state has no remedy by appeal because it has no right to a direct appeal following a trial. *See* A.R.S. § 13-4032; *State v. Bejarano*, 219 Ariz. 518, ¶ 14, 200 P.3d 1015, 1020 (App. 2008) ("The state may appeal only a discrete subset of . . . rulings."). Additionally, this special action involves a pure question of law in a matter of first impression and one likely to recur.[1] *See Phx. Newspapers, Inc. v. Ellis*, 215 Ariz. 268, ¶ 9, 159 P.3d 578, 580 (App. 2007); *Gray v. Irwin*, 195 Ariz. 273, ¶ 5, 987 P.2d 759, 761 (App. 1999).

---

[1]Chase argues this special action is "unripe" because the parties failed to "fully develop[]" some of the arguments below or raised them only orally. But the parties' failure to raise or adequately develop arguments below was not due to a lack of opportunity to do so; indeed, Chase and the state each filed a written memorandum in the trial court addressing whether the matter should be remanded to the grand jury.

4

¶7        As an initial matter, to the extent the trial court intended by its ruling to require the grand jury to determine the existing law under the AMMA, it was in error. "The duty of a grand jury is to decide whether probable cause exists." *State v. Baumann*, 125 Ariz. 404, 409, 610 P.2d 38, 43 (1980). In *Murphy v. Russell*, 40 Ariz. 109, 9 P.2d 1020 (1932), in the context of a malicious prosecution action, our supreme court laid out in detail the respective roles of the court and the jury in determining probable cause to initiate a prosecution. It stated, "Whether a given state of facts constitutes probable cause is always a question of law to be determined by the court, and it cannot relieve itself of this burden by casting it upon the jury." *Id.* at 112, 9 P.2d at 1021. Rather, the court must "instruct [the jurors] specifically as to what state of facts will constitute probable cause," and the function of the jury is "to determine what the actual facts were" and "to apply the law as laid down by the court to those facts." *Id.* In the context of a grand jury proceeding, the grand jurors are instructed not by the court but by the prosecutor as the jury's legal advisor. *See Crimmins v. Superior Court*, 137 Ariz. 39, 42, 668 P.2d 882, 885 (1983). But a defendant has a substantial procedural right in the jury's being properly instructed on the law, and a court must determine whether that has taken place. *See Walker v. Superior Court*, 191 Ariz. 424, ¶ 4, 956 P.2d 1246, 1247-48 (App. 1998). And Chase agreed at oral argument before this court that the trial court erred insofar as it ordered the grand jury to determine which "interpretation" of the AMMA should control.

¶8        The record reflects the grand jury was instructed on the AMMA generally, in its initial instructions. The prosecutor explained, inter alia, that a cardholder under the

AMMA could possess twelve marijuana plants and two-and-a-half ounces of marijuana, but that if the cardholder is "in violation of the [AMMA] in any way, then you're right back to" criminal use of marijuana. She also explained to the jurors that the AMMA provided a presumption of lawful medical use of marijuana, but that the presumption could "be rebutted by evidence that conduct related to marijuana was not for the purpose of treating or alleviating the qualifying patient's" medical condition. She elaborated:

> So if you have an undercover officer who is interacting with someone and the person sells marijuana to them, then the fact that that person has a medical marijuana card, that doesn't help them. You've got evidence that they're acting in violation of that, that they're selling marijuana to someone else.

And, she stated that even if the undercover officer displayed a medical marijuana card, "you can't sell to somebody else who has a card[,] . . . [you] can [only] give to someone else an amount of marijuana."

¶9 The state argues that these instructions were correct and asks that we "clarify the law" by "declaring" that the AMMA's presumption of medical use is "entirely rebuttable so that an individual who exceeds the protections of the law cannot claim partial protection under the same law" and "rule that a medical marijuana cardholder who is authorized to cultivate marijuana is criminally liable for all of the marijuana he grows if he exceeds the protections of the law."

¶10 The AMMA defines the "allowable amount of marijuana" for a qualifying patient to possess as "[t]wo-and-one-half ounces of usable marijuana," and, if the "patient is authorized to cultivate marijuana, twelve marijuana plants." A.R.S. § 36-2801(1)(a).

6

The AMMA, however, "does not authorize any person to engage in," or "prevent the imposition of any civil, criminal or other penalties for engaging in," the use of marijuana "except as authorized" by the AMMA. A.R.S. § 36-2802. The medical use of marijuana under the AMMA includes "the acquisition, possession, cultivation, manufacture, use, administration, delivery, transfer or transportation of marijuana or paraphernalia relating to the administration of marijuana to treat or alleviate" the patient's medical condition. § 36-2801(9).

¶11         The statutes also provide a "presumption that a qualifying patient . . . is engaged in the medical use of marijuana" that "exists if the qualifying patient . . . [i]s in possession of a registry identification card" and "an amount of marijuana that does not exceed the allowable amount of marijuana." A.R.S. § 36-2811(A)(1). This presumption "may be rebutted by evidence that conduct related to marijuana was not for the purpose of treating or alleviating the" patient's medical condition pursuant to the AMMA. § 36-2811(A)(2). Likewise, the AMMA provides that a patient is not "subject to arrest, prosecution or penalty in any manner, or denial of any right or privilege" for his or her "medical use of marijuana pursuant to [the AMMA], if the registered qualifying patient does not possess more than the allowable amount of marijuana." § 36-2811(B)(1). Nor is he or she subject to penalty

> [f]or offering or providing marijuana to a registered qualifying patient or a registered designated caregiver for the registered qualifying patient's medical use or to a registered nonprofit medical marijuana dispensary if nothing of value is transferred in return and the person giving the marijuana does not knowingly cause the recipient to possess more than the allowable amount of marijuana.

7

§ 36-2811(B)(3).

¶12        Our primary purpose in interpreting a statute is to give effect to the intent of the electorate that adopted it. *Calik v. Kongable*, 195 Ariz. 496, ¶ 10, 990 P.2d 1055, 1057 (1999). "With only a few exceptions, if the language is clear and unambiguous, we apply it without using other means of statutory construction." *Id.*

¶13        In § 36-2811, the AMMA provides two different statutory protections for cardholders. First, in subsection (A), the statute provides a presumption that the cardholder is engaged in medical use of marijuana if he or she has a valid card and does not possess more than the allowable amount of marijuana. This presumption may be rebutted by a showing that the cardholder was using or possessing the marijuana for reasons other than medical use. § 36-2811(A)(2). Once rebutted, the presumption disappears and the cardholder may be charged with marijuana-related offenses. *See Korzep v. Superior Court*, 172 Ariz. 534, 539-40, 838 P.2d 1295, 1300-01 (App. 1991) (if presumption has been rebutted, it vanishes). Thus, we reject Chase's suggestion that a defendant may never be charged with or found guilty of marijuana-related offenses so long as he or she uses or possesses an amount of marijuana allowable under the AMMA.

¶14        Second, separate from this presumption, the AMMA affords immunity from prosecution by providing that a cardholder may not be prosecuted for medical use of marijuana "*if* the registered qualifying patient does not possess more than the allowable amount of marijuana." § 36-2811(B)(1) (emphasis added). Thus, by the plain language of the statute, immunity from prosecution is conditioned on, inter alia, a cardholder "not possess[ing] more than the allowable amount of marijuana" and not improperly

8

transferring marijuana. § 36-2811(B)(1), (3). We therefore agree with the state that, if the cardholder does not comply with those conditions, he or she may be prosecuted for marijuana-related offenses. None of a cardholder's marijuana use or possession is protected by the AMMA if he or she fails to abide by the enumerated conditions.

¶15 In claiming protection under this statutory immunity, it is a defendant's burden to "plead and prove," by a preponderance of the evidence, that his or her actions fall within the range of immune action. *Fid. Sec. Life Ins. Co. v. Ariz. Dep't of Ins.*, 191 Ariz. 222, ¶ 9, 954 P.2d 580, 583 (1998); *cf. State v. Rhymes*, 129 Ariz. 56, 57, 628 P.2d 939, 940 (1981) (defendant has burden to show existence of immunity agreement by preponderance of evidence). Whether such immunity exists is a question of law for the trial court. *Link v. Pima Cnty.*, 193 Ariz. 336, ¶ 18, 972 P.2d 669, 674 (App. 1998). "If the existence of immunity turns on disputed factual issues, the jury determines the facts and the court then determines whether those facts are sufficient to establish immunity." *Chamberlain v. Mathis*, 151 Ariz. 551, 554, 729 P.2d 905, 908 (1986). Should the defendant fail to establish immunity, the state, of course, still must prove all elements of the charged offenses beyond a reasonable doubt at trial.

¶16 In his response to the state's petition for special action, Chase argues that the AMMA's protections are conditioned only on not transferring marijuana to a dispensary for value and that a cardholder still is protected if he or she transfers marijuana to another cardholder in exchange for value. As Chase concedes, the trial court has not had an adequate opportunity to address this argument or to allow for the development of evidence on the related factual issues. Thus, our consideration of this

9

issue appears premature and would be largely advisory.  Therefore, in our discretion, we decline to address this argument.

**Disposition**

¶17    Insofar as the trial court's order directs the grand jury to be instructed on two different legal interpretations of the AMMA, that order remanding this matter to the grand jury is vacated.  Because the state has agreed to the remand on other grounds, the court's order is otherwise affirmed.

/s/ *Garye L. Vásquez*
GARYE L. VÁSQUEZ, Presiding Judge

CONCURRING:

/s/ *Virginia C. Kelly*
VIRGINIA C. KELLY, Judge

/s/ *Philip G. Espinosa*
PHILIP G. ESPINOSA, Judge