NOTICE: NOT FOR OFFICIAL PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION IS NOT PRECEDENTIAL
AND MAY BE CITED ONLY AS AUTHORIZED BY RULE.

IN THE

# ARIZONA COURT OF APPEALS
## DIVISION ONE

STATE OF ARIZONA, *Appellee,*

*v.*

SHERRIE YOUNG, *Appellant.*

No. 1 CA-CR 16-0361
FILED 9-14-2017

Appeal from the Superior Court in Navajo County
No. S0900CR201500092
The Honorable Robert J. Higgins, Judge

**AFFIRMED**

COUNSEL

Arizona Attorney General's Office, Phoenix
By Michael O'Toole
*Counsel for Appellee*

Saline Law Group, PLLC, Snowflake
By Jon H. Saline
*Counsel for Appellant*

## MEMORANDUM DECISION

Judge Michael J. Brown delivered the decision of the Court, in which Presiding Judge Peter B. Swann and Judge Patricia A. Orozco[1] joined.

**B R O W N**, Judge:

¶1   Sherrie Young appeals her convictions and sentences for sale of marijuana and misconduct involving weapons. For the following reasons, we affirm.

### FACTS AND PROCEDURAL BACKGROUND

¶2   On December 17, 2013, two detectives working as part of a multi-agency drug trafficking team enlisted the help of a confidential informant to conduct a "controlled buy" from R.J., the target of an investigation. After a purchase was arranged, the detectives searched the informant and his car to ensure he did not have drugs, paraphernalia, or money. The detectives then photographed five twenty-dollar bills, gave them to the informant for the drug purchase, equipped the informant with a recording device, and followed the informant in separate cars to R.J.'s residence.

¶3   After briefly entering the residence, the informant went back to his car, accompanied by R.J. and an unidentified woman. The three of them drove to a local gas station, with the detectives following at an inconspicuous distance. Once the informant parked his car, R.J. exited and approached a white Dodge Durango also parked at the gas station. R.J. briefly sat inside the Dodge and then returned to the informant's car. At that point, the informant drove back to R.J.'s house (followed by the detectives), dropped off his passengers, and then met the detectives at a predetermined location for a search and debriefing. As evidenced by the search, the informant had no money, but did have a plastic baggie with black lettering on the upper-corner that contained a green, leafy substance later identified as marijuana.

---

[1] The Honorable Patricia A. Orozco, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article VI, Section 3 of the Arizona Constitution.

¶4        Meanwhile, one of the investigating detectives requested that a patrol officer follow the Dodge and effectuate a stop if the driver committed a traffic violation.  The responding patrol officer followed the Dodge immediately after it exited the gas station parking lot and turned on his police lights once he observed the Dodge speeding.  As the patrol officer approached the stopped car, he observed a handgun on the passenger front seat and noticed that the hammer was in a firing position.  He immediately asked the driver, Young, for the firearm.  After Young gave him the gun, the officer noted that he smelled fresh marijuana, and Young acknowledged that she had marijuana in a brown paper bag and she consented to a search.  Inside the bag, the officer found individually-packaged baggies of marijuana and brownies, as well as six twenty-dollar bills.  Young, however, showed the officer her medical marijuana card, and the officer determined no basis existed to believe she had committed a drug violation.  Nonetheless, before permitting Young to leave, the officer photographed the drugs and money.

¶5        When the investigating detectives later viewed the patrol officer's photographs of the drug baggies and money, they realized that Young possessed the same five twenty-dollar bills that they had given to the informant (identical serial numbers) and noted that Young's plastic baggies contained the same black lettering in the upper-corners as the marijuana baggie the informant purchased.  The State charged Young with one count of sale of marijuana and one count of misconduct involving weapons based on possession during the commission of a felony offense.

¶6        At trial, Young testified that she was acquainted with R.J. and knew he was a medical-marijuana cardholder.  She explained she had previously transferred free marijuana to him on at least three occasions and, on the day in question, R.J. contacted her and she agreed to meet him at the gas station and give him marijuana.  She claimed that after she handed R.J. the requested marijuana and he exited her car, he "threw some money" through her open window in an apparent "afterthought."  Though Young did not intend to receive any compensation and wanted to return the money, she decided to wait until the next time they met because the parking lot was "very crowded."  When asked about the individually packaged marijuana baggies, Young explained that she preferred to separate different strains of marijuana, and reaffirmed that all the marijuana she possessed was intended for her personal use.  Indeed, she unequivocally denied ever selling marijuana.

¶7 After a two-day trial, the jury convicted Young as charged. The trial court sentenced Young to a three-year probation term on these charges and an unrelated drug conviction. Young timely appealed.

## DISCUSSION

### A. Alleged Preclusion of Arizona Medical Marijuana Act ("AMMA") Immunity Defense

¶8 Before trial, the State moved in limine to preclude Young from presenting an AMMA defense, and the court summarily granted the motion. On the first day of trial, before jury selection, defense counsel asked the trial court to explain why it granted the motion in limine, specifically noting that Young disputed certain facts relevant to the AMMA. The court stated that it was "not deciding any disputed facts," but simply denying an AMMA defense because the AMMA does not immunize a cardholder from prosecution for marijuana sales. In response, defense counsel acknowledged the sale of marijuana is not lawful under the AMMA, but argued the court's ruling presupposed "that a sale occurred," a fact Young disputed. The court then clarified that Young could deny that a sale occurred, but could not claim that a sale was AMMA compliant. As a follow-up, defense counsel questioned the court's procedure, inquiring whether the jury would render a preliminary "factual finding" regarding the existence of a sale, and if the jury concluded no sale had occurred, whether the court would "then decide to apply" immunity or simply "go with what [the jury] decide[d]." The court answered that the existence of a sale was a "factual issue for the jury," and if the jury determined that "there was no sale," the verdict would be, accordingly, "not guilty."

¶9 After the State presented its case-in-chief, defense counsel objected to the trial procedure and asserted that the court was violating Young's right to present a full defense by failing to submit to the jury, under a preponderance of the evidence standard, the disputed factual issue regarding the existence of a sale. The court responded that Young could testify and deny the existence of a sale, but could not offer any legal opinion that her conduct was lawful under the AMMA.

¶10 Citing *State v. Fields*, 232 Ariz. 265 (App. 2013), Young argues the trial court erred by failing to have the jury determine whether a sale occurred, under a preponderance of the evidence standard, before the court evaluated whether statutory immunity applied and submitted the charges to the jury. In *Fields*, the defendant was arrested after he sold six grams of marijuana to an undercover officer. 232 Ariz. at 266, ¶ 2. When the State

presented the matter to a grand jury, a detective testified that officers seized 18 marijuana plants from the defendant's home, which exceeded the permissible number of plants for qualifying cardholders under the AMMA. *Id.* at ¶ 3. The defendant later moved to dismiss the indictment or remand for a redetermination of probable cause, arguing the State failed to present the "clearly exculpatory" evidence sheet, which listed only 11 plants seized, and the police photographs of his home, which showed fewer than 18 plants. *Id.* at 267, ¶ 4. On special action review, this court held that a defendant seeking statutory protection under the AMMA must "plead and prove" by a preponderance of the evidence that his conduct "fall[s] within the range of immune action." *Id.* at 269, ¶ 15. When a defendant does so, a jury must resolve all factual disputes and the trial court "then determines whether those facts are sufficient to establish immunity." *Id.* (quoting *Chamberlain v. Mathis*, 151 Ariz. 551, 554 (1986)). In the event the defendant fails to establish immunity, the State "still must prove all elements of the charged offenses beyond a reasonable doubt at trial." *Id.*

¶11 Unlike *Fields*, in this case the "factual dispute" relevant to the AMMA was also an element of the charged offense, namely, whether Young exchanged marijuana for anything of value. Stated differently, to convict Young of sale of marijuana as charged, the State had to prove she knowingly exchanged marijuana "for anything of value," Arizona Revised Statutes ("A.R.S.") sections 13–3401(32), –3405(A)(4), and to invoke the protection of AMMA statutory immunity, Young had to demonstrate "nothing of value" was "transferred in return" for the marijuana, A.R.S. § 36–2811(B)(3). Because the questions of immunity and culpability turned on the same disputed fact, no preliminary factual issue existed for a jury to determine under a preponderance of the evidence standard. Thus, because the immunity and culpability issues were coextensive, the State essentially bore the burden of proving Young did not qualify for AMMA immunity under the higher standard of beyond a reasonable doubt, and bifurcated jury proceedings were therefore unnecessary. *Cf. State v. Larin*, 233 Ariz. 202, 212, ¶ 38 (App. 2013) (explaining the jury did not need to make a specific finding when the finding is "inherent in the crime").

¶12 During Young's case-in-chief, Young testified that both her and R.J. had medical marijuana cards and that on three prior occasions she had transferred free marijuana to R.J. She also testified that although R.J. gave her money, she had not intended to receive any money and wanted to return it. Moreover, in its final instructions to the jury, the trial court informed the jurors that a registered qualifying patient may lawfully provide marijuana to another registered qualifying patient "if nothing of

value is transferred in return."[2]  Young therefore had the opportunity to present her full defense that she and R.J. were qualified cardholders and that her transfer of marijuana to him, with no intent to receive any form of compensation, was authorized under the AMMA.

## B.  Denial of Motion for Judgment of Acquittal

¶13  Young contends the trial court erred by denying her motion for judgment of acquittal on both charges.  We review de novo a trial court's ruling on a motion pursuant to Arizona Rule of Criminal Procedure ("Rule") 20.  *State v. West*, 226 Ariz. 559, 562, ¶ 15 (2011).  "[T]he relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *Id.* at ¶ 16 (internal quotations omitted).  Sufficient evidence upon which a reasonable jury can convict may be direct or circumstantial and "is such proof that reasonable persons could accept as adequate" to "support a conclusion of defendant's guilt beyond a reasonable doubt."  *State v. Borquez*, 232 Ariz. 484, 487, ¶¶ 9, 11 (App. 2013) (internal quotations omitted).  A motion for judgment of acquittal should be granted only when "there is no substantial evidence to warrant a conviction."  Ariz. R. Crim. P. 20(a).

¶14  Moreover, a defendant who presents a defense following the denial of a Rule 20 motion "waives any error if his case supplies evidence missing in the state's case."  *State v. Bolton*, 182 Ariz. 290, 308 (1995).  In such circumstances, we consider all the evidence presented at trial.  *Id.*  As

---

[2]  Citing her proposed jury instructions, Young contends the trial court erroneously failed to instruct the jury on AMMA statutory immunity under a preponderance of the evidence standard.  The record does not reflect that Young submitted an immunity instruction.  Regardless, the court properly instructed the jury that the State bore the burden of proving each element of the offenses beyond a reasonable doubt.  Had the court also instructed the jury that Young had to prove by a preponderance of the evidence that she received nothing of value in the transfer, as she argues on appeal, the jurors would have been presented with inconsistent and potentially confusing standards for evaluating the evidence regarding this disputed fact.  To the extent Young also argues that the court erred by failing to determine whether she was entitled to AMMA immunity, we again note that the issue of immunity turned on the factual issue of whether Young received anything of value in the transfer, both a disputed fact and an essential element of the offense, and therefore the court could not make such a ruling before the jury rendered its verdicts.

charged in this case, a person commits sale of marijuana by knowingly exchanging marijuana "for anything of value or advantage, present or prospective," A.R.S. §§ 13–3401(32), –3405, and misconduct involving weapons by knowingly using or possessing a deadly weapon during the commission of a felony, A.R.S. § 13–3102(A)(8).

¶15        During its case-in-chief, the State presented evidence that the informant had no drugs on his person at the time he entered R.J.'s residence and only five twenty-dollar bills that investigating detectives had given him to purchase marijuana in the controlled buy.  A short time later, however, after R.J. accompanied the informant to a gas station and briefly sat in Young's car, the informant had no money but did have a baggie containing approximately a quarter-ounce of marijuana.  When an officer stopped Young moments after she exited the gas station parking lot, she had a gun in the front seat, the five twenty-dollar bills the detectives gave the informant, and individual marijuana baggies containing black lettering matching the markings on the informant's marijuana baggie.

¶16        Although Young correctly notes that the State failed to provide any direct evidence that she transferred the marijuana to R.J. and that R.J. transferred the money to her, the State presented sufficient circumstantial evidence such that a reasonable jury could infer those transactions occurred.  Moreover, Young testified that she expressly agreed to provide R.J. marijuana and admitted that he gave her cash for the drugs, albeit she claimed she never intended to receive or keep the compensation.  Given these facts, sufficient evidence existed from which a reasonable jury could find that Young knowingly exchanged marijuana for money and possessed a firearm during the transaction.  Therefore, the trial court did not err by denying Young's Rule 20 motion.

## C.    Alleged Admission of Hearsay Evidence

¶17        At trial, the State did not call R.J. or the informant as witnesses, nor did it present the informant's recording from the day in question as evidence.  Instead, the State introduced narrative evidence regarding the events that transpired on December 17, 2013 through the testimony of two investigating detectives and a patrol officer.  Young contends the trial court improperly permitted an investigating detective to testify regarding statements either the informant or R.J. made, arguing such evidence was hearsay.  The State counters that if the trial court erred by admitting hearsay testimony, any resulting error was harmless.

¶18        In general, an out-of-court statement offered to prove the truth of the matter asserted is inadmissible. Ariz. R. Evid. 801(c), 802. "To be admissible, a court must find that the out-of-court statement fits within one of the exceptions to the rule against hearsay." *State v. Tucker*, 205 Ariz. 157, 165, ¶ 41 (2003). "We review admissions of evidence under exceptions to the rule against hearsay for an abuse of discretion." *Id.*

¶19        After eliciting testimony that the investigating detective could not recall whether he listened in real time to the informant's conversations with R.J., the prosecutor asked the detective whether R.J. had sufficient marijuana to fulfill the requested drug buy. Over objection, the detective stated that he "learned" R.J. "did not have enough of what we ordered," and explained that the informant had "contacted" him so he was aware that they would be traveling to a secondary location. Although the detective did not recount a direct out-of-court statement with this testimony, he implied that the informant stated that relocation would be necessary. In addition, the detective's testimony that he "learned" R.J. had an insufficient quantity of marijuana implied the detective had heard a statement to that effect. But on this record, it is unclear whether such statement was part of (1) the informant's notice that the parties would be relocating, (2) the recorded conversations between the informant and R.J., or (3) the informant's debriefing after the transaction occurred.

¶20        On redirect, the prosecutor asked the detective whether changing locations for a controlled buy was unusual, and the detective explained that dealers commonly relocate drug buys for purposes of obtaining additional drugs from third-party suppliers. The prosecutor then asked, over objection, whether the informant "confirm[ed]" the detective's "assumption[]" that the site of the drug buy changed because R.J. had an insufficient quantity. The trial court sustained the hearsay objection. Immediately thereafter, the prosecutor asked the detective, over objection, whether he listened to the informant's audio recording to gain a greater understanding of the events that transpired. After the trial court overruled defense counsel's hearsay objection, the detective confirmed that he listened to the recording to understand what occurred. Again, the detective did not recount a direct out-of-court statement with this challenged testimony. Nonetheless, Young argues that the detective's response that the audio recordings helped him understand what transpired on the day in question implied that either R.J. or the informant made a recorded statement that was consistent with the detective's earlier testimony that R.J. had insufficient marijuana and relocation to a secondary site was therefore necessary.

¶21        Assuming that the trial court erred by admitting hearsay testimony, we must determine whether the error was harmless. In determining whether an error is harmless, "a reviewing court will affirm a conviction despite the error . . . if the state, in light of all of the evidence, can establish beyond a reasonable doubt that the error did not contribute to or affect the verdict." *State v. Valverde*, 220 Ariz. 582, 585, ¶ 11 (2009) (internal quotation omitted). "The inquiry . . . is not whether, in a trial that occurred without the error, a guilty verdict would surely have been rendered, but whether the guilty verdict actually rendered in this trial was surely unattributable to the error." *Id.* (internal quotation omitted).

¶22        Here, the inadmissible evidence supported the State's theory that R.J. and the informant went to the gas station to obtain marijuana from Young. Without this information, the jury would have still heard that: (1) R.J. and the informant left R.J.'s house and went to the gas station; (2) R.J. left the informant's car to get into Young's car; (3) the informant no longer had the marked money but had a marijuana baggie when he returned to his car; and (4) the informant's baggie had the same markings as the baggies in Young's car that she told the patrol officer was for her personal use. The evidence further showed that Young possessed the same five twenty-dollar bills that the detectives gave to the informant. Moreover, the content of the hearsay evidence was not in dispute. Young testified that R.J. asked her to meet him at the gas station for marijuana and that she supplied R.J. with the marijuana that was ultimately transferred to the informant. Thus, when viewed in light of all the evidence presented at trial, the admission of hearsay evidence was harmless beyond a reasonable doubt. *See State v. Weatherbee*, 158 Ariz. 303, 305 (App. 1988) (explaining the erroneous admission of hearsay evidence is harmless when the improperly admitted hearsay is "entirely cumulative"); *see also State v. Williams*, 133 Ariz. 220, 226 (1982) ("Since the defendant, himself, had testified to substantially the same information as that contained in the hearsay statements, the issue which the statements tended to prove . . . was uncontested and the error was harmless.").

## D.    Preclusion of Entrapment Defense

¶23        Young contends that the trial court improperly precluded her entrapment defense. To raise an entrapment defense, a person "must admit by the person's testimony or other evidence the substantial elements of the offense charged." A.R.S. § 13–206(A); *see also State v. Gray*, 239 Ariz. 475, 478, ¶ 14 (2016) ("[I]n order to raise an entrapment defense, the accused must affirmatively admit, by testimony or other evidence, the substantial elements of the offense."). The "substantial elements of the offense"

includes all the requisite elements. *Gray*, 239 Ariz. at 478, ¶ 14; *see State v. Nilsen*, 134 Ariz. 431, 432 (1983) ("Our cases have consistently held that to avail himself of the defense of entrapment, a defendant must admit all the elements of the offense."). This admission requirement precludes a defendant from introducing evidence or arguing in a manner inconsistent with the defense. *Gray*, 239 Ariz. at 477, ¶ 8 (explaining a defendant "who wishes to avail himself of a defense of entrapment" may not deny "knowledge of the crime").

**¶24** Young was charged with knowingly selling marijuana, in violation of A.R.S. §§ 13–3401(32) and 13-3405. At trial, Young denied selling marijuana and testified that she never intended to receive anything of value in exchange for her transfer of marijuana to R.J. Because Young did not admit the substantive elements of the charge, and indeed unequivocally denied committing the offense, she was statutorily precluded from raising an entrapment defense.

## CONCLUSION

**¶25** For the foregoing reasons, we affirm Young's convictions and sentences.



AMY M. WOOD • Clerk of the Court
FILED: AA