IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

JAMES TERRY,
*Plaintiff/Appellant,*

*v.*

UNITED PARCEL SERVICE, INC.,
*Defendant/Appellee.*

No. 1 CA-CV 21-0114
FILED 3-31-2022

Appeal from the Superior Court in Maricopa County
No. CV2019-006036
The Honorable Christopher A. Coury, Judge

**AFFIRMED**

COUNSEL

Fredenberg Beams, Phoenix
By Daniel E. Fredenberg
*Co-Counsel for Plaintiff/Appellant*

Kelly & Lyons, PLLC, Scottsdale
By Jason M. Kelly, Richard Lyons
*Co-Counsel for Plaintiff/Appellant*

Quarles & Brady LLP, Phoenix
By Eric B. Johnson
*Counsel for Defendant/Appellee*

---

## OPINION

Presiding Judge Samuel A. Thumma delivered the opinion of the Court, in which Chief Judge Kent E. Cattani and Judge Maurice Portley[1] joined.

---

**T H U M M A**, Judge:

¶1        In April 2017, plaintiff James Terry acted strangely at a sales meeting, prompting his co-workers to file fitness-for-duty reports expressing concerns. Terry's employer, defendant United Parcel Services, Inc. (UPS), asked him to drug test. Terry did so and he tested positive for a marijuana metabolite and amphetamine. At that time, use or possession of marijuana was a criminal offense in Arizona. After UPS fired Terry, he sued, claiming wrongful termination and defamation. Terry challenges the grant of summary judgment against him on both counts. Because Terry has shown no error, the rulings are affirmed.

### FACTS AND PROCEDURAL HISTORY

¶2        On the morning of his first day back from vacation, Terry, a UPS Sales Director, met with sales managers who reported to him. As described by some of those managers, Terry acted strangely during the meeting. Terry made a statement about "a scorpion climbing up a wall." He later testified to saying, "I think I saw a scorpion run across the table" and asking the group, "Did anyone see that scorpion back there?" Terry later stated that he said a shadow was a scorpion because he wanted to see if anyone was paying attention. However, there was no scorpion.

¶3        Others at the meeting said Terry's speech was slurred, he was incoherent and was "asking [the] same questions over and over, losing [his] train of thought." They reported Terry had heavy eyelids, red eyes and was talking excessively. Three co-workers filed "Reasonable Cause/Fitness-for-Duty Medical Evaluation" forms, one during the meeting, providing details

---

[1] The Honorable Maurice Portley, Retired Judge of the Court of Appeals, Division One, has been authorized to sit in this matter pursuant to Article 6, Section 3, of the Arizona Constitution.

about Terry's behavior, noting "abnormal actions, appearance or conduct which requires a fitness-for-duty evaluation."

¶4            In response, UPS directed Terry to provide a urine sample for drug testing, and he complied. Terry did not, at that time, tell UPS that he had a medical marijuana card under Arizona's Medical Marijuana Act (AMMA), A.R.S. §§ 36-2801, et seq. (2022),[2] or that he had a prescription for Adderall.

¶5            Terry's sample tested positive for carboxy-THC, a non-impairing metabolite of marijuana, and amphetamine, which he later attributed to prescription Adderall. When a medical review officer told him of the positive drug test, Terry admitted using marijuana while on vacation, taking oxycodone and acetaminophen painkillers daily and using amphetamine. Terry then told the medical review officer that he had a medical marijuana card, but denied that he was impaired at work. UPS then fired Terry. The UPS representatives who decided to fire Terry later testified that they did not know that he was a medical marijuana cardholder.

¶6            Terry sued in federal court, alleging among other things that UPS fired him because his drug test showed a non-impairing marijuana metabolite. After dismissing that case, Terry filed this case in superior court, alleging unlawful discrimination in violation of the AMMA and defamation. The parties asked the superior court to resolve various motions they had filed in federal court. In a September 2019 ruling, the superior court found Terry had no private cause of action under the AMMA, a ruling Terry does not challenge here. The September 2019 ruling also found disputed issues of material fact precluded summary judgment on Terry's defamation claim and that there were disputed facts about whether UPS violated the AMMA.

¶7            Terry then amended his complaint to allege: (1) wrongful termination in violation of the Arizona Employment Protection Act (AEPA), A.R.S. §§ 23-1501, et seq., and (2) defamation. After the close of

---

[2] Absent material revisions after the relevant dates, statutes and rules cited refer to the current version unless otherwise indicated. In November 2020, Arizona voters passed Proposition 207, decriminalizing possession and use of certain amounts of marijuana. *See* A.R.S. §§ 36-2850 to -2865. In April 2017, however, possession and use of marijuana were illegal unless authorized by the AMMA.

discovery, UPS moved for summary judgment, arguing termination was proper and that Terry's claims failed, relying in part on Arizona's Drug Testing of Employees Act (DTEA). *See* A.R.S. §§ 23-493, et seq. In September 2020, the court granted summary judgment for UPS on both of Terry's claims. After entry of a final judgment, Terry moved for a new trial, which the court denied. This court has jurisdiction over Terry's timely appeal, challenging the grant of summary judgment and the denial of his motion for new trial, pursuant to Article 6, Section 9, of the Arizona Constitution and A.R.S. §§ 12-120.21(A)(1) and -2101(A)(1).

## DISCUSSION

**¶8** This court reviews the entry of summary judgment de novo, "viewing the evidence and reasonable inferences in the light most favorable to the party opposing the motion," *Andrews v. Blake*, 205 Ariz. 236, 240 ¶ 12 (2003), to determine "whether any genuine issues of material fact exist," *Brookover v. Roberts Enters., Inc.*, 215 Ariz. 52, 55 ¶ 8 (App. 2007). This court will affirm the entry of summary judgment if it is correct for any reason. *Hawkins v. State*, 183 Ariz. 100, 103 (App. 1995).

## I.    The September 2019 Ruling Did Not Preclude the Grant of Summary Judgment in the September 2020 Ruling.

**¶9** Terry argues that the disputed issues of material fact noted in the September 2019 ruling precluded the grant of summary judgment in the September 2020 ruling. It is unclear why the September 2019 ruling addressed the merits of Terry's AMMA claim *after* finding he had no private cause of action under the AMMA. Regardless, the September 2020 ruling addressed Terry's AEPA claim *added after* the September 2019 ruling. In addition, although the defamation claim was largely unchanged, UPS' legal argument about why that claim failed differed from the argument addressed in the September 2019 ruling.

**¶10** Among other things, after the September 2019 ruling, Terry amended his complaint, the parties conducted discovery and UPS made different arguments in seeking summary judgment on a different record. Terry has not shown how the September 2019 ruling, addressing a different claim on a different record, precluded summary judgment on the new AEPA claim or based on different legal arguments on his defamation claim. *Cf. Orme School v. Reeves*, 166 Ariz. 301, 309 & nn. 10-11 (1990) (discussing importance of discovery being closed when addressing summary judgment and noting discretion in denying — but not granting — summary judgment) (citing authority). In addition, the same judge issued both

rulings with no intervening appeal, further negating any argument that the September 2019 ruling precluded the court from making the September 2020 ruling challenged here. *See, e.g.*, *Chung v. Choulet*, 248 Ariz. 236, 240 ¶ 16 (App. 2020) ("A court does not lack the power to change a ruling simply because it ruled on the questions at an earlier stage.") (citations omitted).

## II.     The Superior Court Properly Granted Summary Judgment for UPS on Terry's Wrongful Termination Claim Under the AEPA.

¶11         Terry's amended complaint first alleged wrongful termination in violation of the AEPA. Subject to three exceptions, the AEPA states that "[t]he employment relationship is severable at the pleasure of either the employee or the employer." A.R.S. § 23-1501(A)(2). As Terry acknowledges, this statutory employment-at-will rule tracks Arizona case law predating the AEPA. *See Wagenseller v. Scottsdale Mem. Hosp.*, 147 Ariz. 370, 378 (1985) ("We hold that an employer may fire for good cause or for no cause. [An employer] may not fire for bad cause — that which violates public policy."). As a result, unless UPS fired Terry for a "bad cause," his wrongful termination claim fails.

¶12         Terry asserts that his termination "as a result of the urinalysis showing only carboxy is unlawful discrimination in violation of the AMMA." UPS counters that it fired Terry based on his observed behaviors at work, which evidenced workplace impairment, and "for violat[ing] UPS's drug and alcohol policy." Because Terry was an at-will employee, absent bad cause, UPS could fire him for any cause or no cause at all. A.R.S. § 23-1501(A)(2). Thus, UPS properly could fire Terry based on observed behaviors at work, even if those behaviors were disputed, unless doing so constituted bad cause. *Id.*

¶13         The three exceptions to employment at-will under the AEPA, which can constitute "bad cause," are when an employee is fired: (1) "in breach of an employment contract;" (2) "in violation of a statute of this state" or (3) "in retaliation" for exercising specified rights. A.R.S. §§ 23-1501(A)(3)(a)-(c). Terry does not allege that his firing breached a contract or was retaliatory. Terry does, however, allege that he was fired in violation of the AMMA, "a statute of this state." A.R.S. § 23-1501(A)(3)(b).

¶14         In addressing a claim for being fired in violation of "a statute of this state," the AEPA distinguishes between statutes that provide a remedy and statutes that do not. "If the statute provides a remedy to an employee for a violation of the statute," those remedies "are the exclusive remedies for the violation of the statute or the public policy set forth in or

arising out of the statute." A.R.S. § 23-1501(A)(3)(b). "If the statute does not provide a remedy to an employee for the violation of the statute, the employee shall have the right to bring a tort claim for wrongful termination in violation of the public policy set forth in the statute." *Id.* Because Terry does not challenge the ruling that he had no private cause of action under the AMMA, his wrongful termination claim under the AEPA required him to show that his firing was in "violation of the public policy set forth in" the AMMA.

### A. Terry's Firing Did Not Violate the Public Policy Set Forth in the AMMA.

¶15 The AMMA states that an employer cannot fire an employee holding a medical marijuana card based on the employee's "status as a cardholder" or on a "positive drug test for marijuana or components or metabolites" *unless* (1) the employee "used, possessed or was impaired by marijuana" at or during work or (2) the employer would lose benefits if the employee was not terminated. A.R.S. § 36-2813(B)(2). Citing this statute, Terry argues the "AMMA identifies two — and only two — circumstances under which an employer may take adverse employment action against an employee with a medical marijuana card." That argument ignores the AEPA and misapplies the AMMA.

¶16 The AEPA provides that an employer may fire an employee (including a medical marijuana cardholder) for good cause or no cause at all. A.R.S. § 23-1501(A)(2). The AEPA does not, as Terry suggests, limit when an employer may fire an employee who is a medical marijuana cardholder.

¶17 The AMMA, in turn, provides that an employee holding a medical marijuana card "shall not be considered to be under the influence of marijuana *solely* because of" a positive drug test showing an "insufficient concentration to cause impairment." A.R.S. § 36-2814(A)(3) (emphasis added). But "[n]othing in" the AMMA "requires . . . [a]n employer to allow . . . any employee to work while under the influence of marijuana." A.R.S. § 36-2814(A)(3). To the contrary, the AMMA allows the firing of a medical marijuana cardholder employee for "working while under the influence of marijuana." A.R.S. § 36-2814(B). Thus, the AMMA does not restrict an employer's right to fire an employee for good cause (such as workplace behavior) or no cause. Similarly, under the AMMA, an employee holding a medical marijuana card who tests positive may be fired for workplace impairment, except that impairment cannot be based "solely" on a drug test showing "the presence of metabolites or components

of marijuana that appear in insufficient concentration to cause impairment." A.R.S. § 36-2814(B).

¶18        As applied, Terry was not fired solely because of a test showing the presence of a marijuana metabolite. Instead, UPS fired Terry based on his observed behaviors at work and "for violat[ing] UPS's drug and alcohol policy." Thus, Terry has not shown that his firing violated the AMMA's public policy.

¶19        Terry argues that he (not UPS) was entitled to summary judgment on liability because, under the AMMA, "a medical marijuana cardholder cannot be fired for a positive drug screen of marijuana metabolites or components insufficient to cause impairment." If the sole reason for an employee's firing was a drug test showing only the presence of a non-impairing metabolite of marijuana, such an argument might be more persuasive. But that is not what Terry's drug test revealed.[3] Moreover, Terry's observable behaviors provided a basis for his firing.[4] Terry's argument overstates the protections of the AMMA and does not reflect what happened here.

¶20        Terry's arguments also overlook that the AMMA is not self-effectuating. An individual wishing to claim the protection of the AMMA must timely invoke and then "'plead and prove,' by a preponderance of the evidence, that his or her actions fall within the range of immune action." *State v. Fields ex rel. Cnty. of Pima*, 232 Ariz. 265, 269 ¶ 15 (App. 2013). When confronted with reports of his odd behavior and a request that he drug test, Terry did not invoke the AMMA. Instead, while knowing he had recently used marijuana, Terry agreed to test without telling UPS he was a medical marijuana cardholder. Terry then submitted a sample for testing and learned he tested positive for carboxy-THC and amphetamine. ***Only then*** did Terry seek to invoke the AMMA. In now claiming wrongful

----

[3] Even under Terry's view, his positive test for amphetamine would not be subject to protection under the AMMA.

[4] As a result, Terry's argument that the "substantial motivating factor" test mentioned in *Murcott v. Best W. Int'l* should apply here is misplaced. 198 Ariz. 349, 360 ¶ 58 (App. 2000). *Murcott* involved a defense that the plaintiff's "whistle-blowing motivated his termination." *Id.* Terry cites no other Arizona case using such a test in any context, let alone outside the whistle-blowing context, and this court has found none. *Murcott* was also decided long before the enactment of the AMMA and, as a result, did not address the issues raised here.

termination, Terry seeks to use the positive carboxy-THC test to assert the AMMA prevented him from being fired.

¶21 No one knows what UPS may have done if Terry had invoked the AMMA when directed to test. UPS may have chosen to forgo testing for marijuana. However, by waiting to invoke the AMMA until after learning he tested positive, Terry failed to timely invoke the immunities of the AMMA to claim he could not be fired. To conclude otherwise would allow an employee who was an AMMA cardholder to submit to drug testing, knowing the test results would show use of an illegal drug absent application of the AMMA, and then claim immunity from being fired by invoking the AMMA. Terry's AMMA argument is unavailing.

### B. The Public Policy of the Drug Testing of Employees Act Cannot Provide the Basis for an AEPA Claim.

¶22 The parties assert various arguments about the applicability of the Drug Testing of Employees Act (DTEA), with Terry arguing the Act unconstitutionally modified the AMMA, a voter-initiative, and UPS arguing the DTEA precludes Terry's claims. The DTEA expressly provides for causes of action for its violation. *See* A.R.S. §§ 23-493.07 ("Causes of action based on test results"); -493.08 ("Limits to causes of action"). Because the DTEA provides remedies for its breach, the public policy of the DTEA cannot provide the basis for an AEPA claim. A.R.S. § 23-1501(A)(3)(b). Thus, the only way for Terry to enforce the DTEA would have been to assert a cause of action under that statute. Because Terry asserted no DTEA claim, this court need not address the parties' competing arguments under the DTEA, including whether the application of protections for an employer acting in good faith must be resolved by a jury. *See* A.R.S. § 23-493.06 ("Employer protection from litigation").[5]

### III. The Court Properly Granted Summary Judgment on Terry's Defamation Claim.

¶23 Terry asserted a defamation per se claim, alleging UPS "communicated false and defamatory statements" about him, "including

---

[5] Terry also argues the record contains disputed issues of material facts precluding summary judgment on UPS' affirmative defenses. The dispositive issue, however, is whether the record created a disputed issue of material fact about whether Terry was fired for "bad cause." Because it did not, the court properly granted summary judgment against him on his wrongful termination claim.

statements that [he] violated UPS's drug and alcohol policy and that [he] was impaired at work." The DTEA sets forth specific requirements that must be met for any defamation claim "against an employer who has established a program of drug testing or alcohol impairment testing." A.R.S. § 23-493.08. Along with alleging the elements of a defamation claim generally, *see Dube v. Likins*, 216 Ariz. 406, 417 ¶ 35 (App. 2007) (citations omitted), Terry had to plead and prove that "[t]he information disclosed was a false positive test result" and "[t]he false positive test result was disclosed negligently," A.R.S. § 23-493.08(A). Terry failed to do so.

¶24 Terry did not claim his positive drug test was false. Instead, he admitted to testing positive, an admission the superior court found barred his defamation claim. Although he argues on appeal "the defamation occurred based on a false positive," he waived that assertion, which also contradicts his admission to the superior court. *Odom v. Farmers Ins. Co. of Ariz.*, 216 Ariz. 530, 535 ¶ 18 (App. 2007) ("[A]rguments raised for the first time on appeal are untimely and deemed waived."); *In re Marriage of Thorn*, 235 Ariz. 216, 222 ¶ 27 (App 2014) (judicial estoppel prevents a party from taking different factual positions in different phases of litigation). And Terry's drug test showed 60 nanograms per milliliter of carboxy-THC, a level confirmed by a subsequent test. Nor has Terry supported his novel argument that "UPS falsely reported that he was positive for impairment" as a basis for his DTEA-based defamation claim. Because the record contains no evidence that Terry had a "false positive test result" as used in the DTEA, his defamation claim fails. A.R.S. § 23-493.08.

## CONCLUSION

¶25 Because Terry has not shown a genuine dispute of any material fact, the judgment is affirmed. UPS is awarded its taxable costs incurred on appeal contingent on its compliance with ARCAP 21.

