IN THE

# SUPREME COURT OF THE STATE OF ARIZONA

———————————

**SWIFT TRANSPORTATION CO. OF ARIZONA L.L.C.,**
*Petitioner,*

*v.*

**THE HONORABLE KRISTA M. CARMAN, JUDGE OF THE SUPERIOR COURT OF
THE STATE OF ARIZONA, IN AND FOR THE COUNTY OF YAVAPAI,**
*Respondent Judge,*

**THOMAS MOUNTZ, THE HUSBAND OF JULIE MOUNTZ, ON BEHALF OF HIMSELF
AND ALL OTHER STATUTORY BENEFICIARIES FOR THE WRONGFUL DEATH OF
JULIE MOUNTZ, INCLUDING MAGGIE KEGLEY, DAUGHTER OF JULIE MOUNTZ,
LUKE DANIEL MOUNTZ, SON OF JULIE MOUNTZ; HEIDI KNIELING, AS
CONSERVATOR AND FULL GUARDIAN OF JODY SUE ENGEL, A LEGALLY
INCAPACITATED INDIVIDUAL,**
*Real Parties in Interest.*

No. CV-20-0119-PR
Filed August 23, 2022

———————————

Appeal from the Superior Court in Yavapai County
The Honorable Krista M. Carman, Judge
No. P1300CV201800589
V1300CV201880093
V1300CV201880095
**REVERSED**

Order of the Court of Appeals, Division One
No. 1 CA-SA 20-0060
Filed Apr. 9, 2020
**VACATED**

———————————

COUNSEL:

Phillip H. Stanfield, Eileen Dennis GilBride (argued), Clarice A. Spicker,
Alejandro D. Barrientos, Jones, Skelton & Hochuli P.L.C., Phoenix,
Attorneys for Swift Transportation Co. of Arizona, L.L.C.

David L. Abney (argued), Ahwatukee Legal Office, P.C., Phoenix, Attorneys for Thomas Mountz and Paul Champion

Jonathan V. O'Steen, O'Steen & Harrison PLC, Phoenix; Lincoln Combs, Gallagher & Kennedy P.A., Phoenix; and Geoffrey M. Trachtenberg, Levenbaum Trachtenberg PLC, Phoenix, Attorneys for Amicus Curiae Arizona Association for Justice/Arizona Trial Lawyers Association

Todd A. Rigby, Lewis Brisbois Bisgaard & Smith, LLP, Phoenix, Attorneys for Amicus Curiae Trucking Industry Defense Association

_____

CHIEF JUSTICE BRUTINEL authored the Opinion of the Court, in which VICE CHIEF JUSTICE TIMMER and JUSTICES BOLICK, LOPEZ, BEENE, and MONTGOMERY joined.[*]

_____

CHIEF JUSTICE BRUTINEL, Opinion of the Court:

¶1 This case requires us to clarify the standard of proof applicable to establishing a prima facie case for punitive damages necessary to justify the discovery of a defendant's financial information. We hold that to make such a showing in a negligence case, a plaintiff must establish that there is a reasonable likelihood that the punitive damages claim will be submitted to the jury. We also hold that a punitive damages claim will be submitted to the jury only where there is proof that the defendant's conduct was either intended to cause harm, motivated by spite or ill will, or outrageous, in which the defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant injury to others.

## I.     BACKGROUND

¶2 One night in January 2018, Swift Transportation Co.'s ("Swift") driver, Brian Vanderhoff, was driving an empty tractor trailer to

_____

[*] Although Justice Andrew W. Gould (Ret.) participated in the oral argument in this case, he retired before issuance of the opinion and did not take part in its drafting.

Phoenix in the rain. Vanderhoff had the truck's "Jake Brake"[1] engaged and the cruise control set to sixty-two miles per hour in a seventy-five-mile-per-hour zone. While he was passing a vehicle in the right-hand lane on a downhill-sloping curve, the truck hydroplaned and jackknifed, partially blocking traffic in the left lane. Shortly thereafter, another tractor trailer drove by and, trying to avoid Vanderhoff's trailer, collided with two other vehicles. The resulting collision killed or injured several travelers, including family members of Thomas Mountz and Paul Champion (collectively, "Plaintiffs").

¶3         Plaintiffs sued Swift alleging negligence under a theory of respondeat superior. Plaintiffs also filed a "Motion on Prima Facie Case for Punitive Damages" to allow them to obtain Swift's financial records.

¶4         The superior court granted the motion. In its ruling, the court made the following findings of fact: (1) Vanderhoff had been trained it was dangerous to drive in the rain with the Jake Brake engaged and should have disengaged it when it started raining; (2) he knew it was dangerous to operate his vehicle with cruise control in the rain and while pulling an empty trailer; (3) he knew driving with an empty trailer makes the truck less stable and more likely to hydroplane; (4) he was traveling at sixty-two miles per hour in heavy rain; (5) his visibility was impaired by the rain and he was trained to be careful with his speed when traveling downhill and around curves especially in low visibility environments; (6) he did not slow down as he went downhill and around a curve in the rain immediately prior to the collision; (7) he passed a vehicle on the right while he was entering the downhill left curve; (8) he did not leave his vehicle following the initial collision and did not try to warn other vehicles of the hazard; (9) he was on the phone with his daughter using a hands-free Bluetooth device and had been talking with her for at least thirty minutes before the collision and was still talking with her when the crash occurred; and (10) he told investigating officers at the crash site that he was traveling only forty-five miles per hour at the time of the crash. Based upon these facts, the court found that "Vanderhoff's actions consciously disregarded the unjustifiable substantial risk of significant harm to others," and therefore

---

[1] A "Jake Brake" is "[a]n engine brake for truck diesel engines that cuts off fuel flow and interrupts the transfer of mechanical energy to the drive mechanism," slowing the truck using the resistance from the compression of the engine cylinders. *Jake Brake*, Lexico, https://www.lexico.com/en/definition/jake_brake (last visited Aug. 18, 2022).

Plaintiffs were entitled to discover Swift's financial records for the purpose of pursuing their punitive damage claim.

¶5 Swift petitioned for special action, asserting that the superior court erred in granting the Plaintiffs' motion without establishing that the defendant's conduct, if proven, was "aggravated" or "outrageous." The court of appeals granted jurisdiction but denied relief, finding that "the superior court's assessment [was] supported by the record."

¶6 We accepted review to clarify the standard for and the evidence necessary to support a prima facie claim for punitive damages to allow discovery of a defendant's financial information, an issue of statewide importance. We have jurisdiction under article 6, section 5(3) of the Arizona Constitution.

## II. DISCUSSION

¶7 Punitive damages exist for the limited purpose of punishing outrageous conduct to deter others from engaging in such conduct. *Volz v. Coleman Co.*, 155 Ariz. 567, 570 (1987). A plaintiff must present the trier-of-fact with sufficient evidence to calculate a reasonable punitive damage award sufficient to punish. *Hawkins v. Allstate Ins. Co.*, 152 Ariz. 490, 497 (1987). Accordingly, the wealth of a defendant is relevant and discoverable in a proper case. *Id.* However, such financial information is confidential, and "the possibilities of harassment and misuse of civil process are obvious." *Larriva v. Montiel*, 143 Ariz. 23, 26 (App. 1984). Thus, to obtain discovery of a defendant's financial information, the plaintiff must make a prima facie showing that he or she will be entitled to present the issue of punitive damages to the jury. *Id.* A plaintiff makes such a showing by establishing that it is reasonably likely that the issue of punitive damages will ultimately be submitted to the jury for resolution. *See id.* at 25.

### A. Standard of Review

¶8 We defer to a trial court's discovery-related ruling absent an abuse of discretion. *Twin City Fire Ins. Co. v. Burke*, 204 Ariz. 251, 253 ¶ 10 (2003). We will affirm that court's factual findings if they are supported by reasonable evidence. *Id.* at 254 ¶ 10. But a court abuses its discretion if it commits an error of law in reaching its conclusions. *Id.*

### B. Evolution of Punitive Damages

¶9 Before 1986, reckless indifference to the rights or safety of others was sufficient to support a claim for punitive damages. *See, e.g.,*

4

*Nielson v. Flashberg*, 101 Ariz. 335, 341 (1966) ("[Punitive] damages are applicable where there is a 'reckless indifference to the interests of others.'" (quoting *McNelis v. Bruce*, 90 Ariz. 261, 269 (1961))). Gross negligence, too, was sufficient for a punitive damage claim, as was the cumulative impact of several acts of ordinary negligence. *See, e.g.*, *S. Pac. Transp. Co. v. Lueck*, 111 Ariz. 560, 570 (1975) (affirming a jury's punitive damage award because defendant caused plaintiff's injury "either deliberately or through wanton or gross negligence"); *Grant v. Ariz. Pub. Serv. Co.*, 133 Ariz. 475, 480 (App. 1981) (stating that cumulative acts of ordinary negligence can amount to wanton negligence and justify punitive damages), *vacated on other grounds*, 133 Ariz. 434 (1982). The standard of proof for such a claim was a preponderance of the evidence. *See Andrew Brown Co. v. Painters Warehouse, Inc.*, 111 Ariz. 404, 408 (1975).

¶10        Then in 1986, this Court "significantly altered the availability of punitive damages in civil lawsuits." Ted A. Schmidt, *Punitive Damages in Arizona: The Reports of Their Death Are Greatly Exaggerated*, 29 Ariz. L. Rev. 599, 599 (1987).

¶11        *Rawlings v. Apodaca*, 151 Ariz. 149, 162 (1986), an insurance bad faith case, held that punitive damages may be awarded only when a plaintiff can prove that the "defendant's evil hand was guided by an evil mind." In describing the evil hand, *Rawlings* stated that "[t]he 'intent' required . . . is an 'evil hand' — the intent to do the act." *Id.* at 160. An "evil hand" was sufficient to establish the tort of bad faith, *id.*, but both an "evil hand" *and* an "evil mind" were necessary to warrant punitive damages, *id.* at 162. This is because "[s]omething more than the mere commission of a tort is always required for punitive damages," *id.* (quoting W. Page Keeton et al., *Prosser and Keeton on the Law of Torts* § 2, at 9 (5th ed. 1984)), in order to "restrict its availability to those cases in which the defendant's *wrongful conduct* was guided by *evil motives*," *id.* (emphasis added). Thus, the "evil hand" is the wrongful conduct giving rise to the underlying tort and an "evil mind" is the intention to engage in the wrongful conduct required for punitive damages. *See id.* An evil mind "may be found where [the] defendant intended to injure the plaintiff . . . [or] where, although not intending to cause injury, [the] defendant consciously pursued a course of conduct knowing that it created a substantial risk of significant harm to others." *Id.*

¶12        *Rawlings* also held that punitive damages "are recoverable in bad faith tort actions when, *and only when*, the facts establish that defendant's conduct was aggravated, outrageous, malicious or fraudulent." *Id.* Indeed, "mere negligence is not enough, even though it is so extreme

and egregious to be characterized as 'gross,' . . . to justify punitive damages." *Id.* (quoting Keeton et al., *supra*, § 2, at 10). Rather, "action justifying the award of punitive damages is 'conduct involving some element of outrage similar to that usually found in crime.'" *Id.* (quoting Restatement (Second) of Torts § 908 cmt. b (Am. L. Inst. 1979)).

¶13　　　*Linthicum v. Nationwide Life Insurance Co.*, 150 Ariz. 326 (1986), published one day later and similarly involving an insurance bad faith claim, echoed *Rawlings*. This Court held that "before a jury may award punitive damages there must be evidence of an 'evil mind' *and* aggravated and outrageous conduct." *Id.* at 331 (emphasis added). *Linthicum* reiterated that, "[i]n whatever way the requisite mental state is expressed, *the conduct must also be aggravated and outrageous*." *Id.* (emphasis added). Further raising the threshold for obtaining punitive damages, *Linthicum* "impose[d] a more stringent standard of proof" for such awards in stating that "punitive damages should be awardable only upon clear and convincing evidence of the defendant's evil mind." *Id.* at 332.

¶14　　　In short, both *Rawlings* and *Linthicum* sought to cabin punitive damage awards to only those cases where punishment was appropriate. *Rawlings*, 151 Ariz. at 162 ("We do not believe that the concept of punitive damages should be stretched. We restrict its availability to those cases in which the defendant's wrongful conduct was guided by evil motives."); *Linthicum*, 150 Ariz. at 331 (concluding punitive damage awards should be limited to "consciously malicious or outrageous acts of misconduct where punishment and deterrence is both paramount and likely to be achieved"). The cases intended to limit punitive damage claims to only the most egregious cases. *See Linthicum*, 150 Ariz. at 331. Neither gross negligence nor reckless indifference was sufficient any longer for a punitive damage claim. *Rawlings*, 151 Ariz. at 162; *Linthicum*, 150 Ariz. at 331 ("A standard that allows exemplary awards based upon gross negligence or mere reckless disregard of the circumstances overextends the availability of punitive damages, and dulls the potentially keen edge of the doctrine as an effective deterrent of truly reprehensible conduct." (quoting *Tuttle v. Raymond*, 494 A.2d 1353, 1361 (Me. 1985))).

¶15　　　Subsequent insurance bad faith cases affirmed these restrictions. *See, e.g.*, *Hawkins*, 152 Ariz. at 497, 503 (applying *Rawlings/Linthicum* punitive damage standard); *Gurule v. Ill. Mut. Life & Cas. Co.*, 152 Ariz. 600, 601 (1987) (same); *Filasky v. Preferred Risk Mut. Ins. Co.*, 152 Ariz. 591, 598–99 (1987) (same). *Rawlings* and *Linthicum* were quickly extended to cases other than insurance bad faith claims. *See, e.g.*, *Bradshaw v. State Farm Mut. Auto Ins. Co.*, 157 Ariz. 411, 422 (1988) (malicious

6

prosecution); *Thompson v. Better-Bilt Aluminum Prods. Co.*, 171 Ariz. 550, 555–56 (1992) (wrongful discharge).

¶16 The following year, however, *Gurule*, also an insurance bad faith case, muddied the waters. *Gurule* stated that "[e]ven if the defendant's conduct was not outrageous, a jury may infer evil mind if [the] defendant deliberately continued his actions despite the inevitable or highly probable harm that would follow," and that the "quality of [the] defendant's conduct is relevant and important only because it provides one form of evidence from which [the] defendant's motives may be inferred." 152 Ariz. at 602. These statements seemingly conflict with *Linthicum*, which required an evil mind *and* outrageous conduct to support a punitive damage award. *See* 150 Ariz. at 331. Our cases following *Gurule* failed to clarify this point. *See, e.g.*, *Thompson*, 171 Ariz. at 556–57 (quoting language from *Linthicum* requiring outrageous conduct but then quoting *Gurule* stating that conduct need not be outrageous). But *Gurule* was not a negligence case.

¶17 Notably, most of this Court's punitive damages jurisprudence addresses the outrageous conduct issue only in the context of intentional tort claims. But one post-*Rawlings*/*Linthicum* case—involving a claim for punitive damages arising from negligence—is instructive.

¶18 In *Volz*, a defectively designed liquid fuel lantern sprayed burning fuel and severely burned a five-year-old child. 155 Ariz. at 568. The manufacturer was aware of the defect and had repaired it in new lanterns but chose not to recall the lanterns or notify owners of the defect for the lanterns already sold. *Id.* at 569. In setting aside the jury award of punitive damages, this Court cited with approval *Thomas v. American Cystoscope Makers, Inc.*, 414 F. Supp. 255 (E.D. Pa. 1976), noting that the "plaintiff's evidence . . . was insufficient as a matter of law *to demonstrate that type of 'outrageous conduct' on which an award of punitive damages must depend*." *Id.* at 570 (emphasis added) (quoting *Thomas*, 414 F. Supp. at 267). Citing *Rawlings* and *Linthicum*, *Volz* affirmed that "[t]he punitive damages standard in Arizona requires 'something more' than gross negligence," and that "[t]he 'something more' is the evil mind," which "may be shown by either 1) evil actions; 2) spiteful motives; or 3) *outrageous*, oppressive or intolerable conduct that creates a substantial risk of tremendous harm to others." *Id.* (emphasis added); *accord Gurule*, 152 Ariz. at 602 (stating that the punitive damage standard "is satisfied by evidence that [the] defendant's wrongful conduct was motivated by spite, actual malice, or intent to defraud," or by the defendant's "conscious and deliberate disregard of the interests and rights of others"). *Volz* thus required that, absent evidence of evil actions or spiteful motives, the evil mind motivating

7

a defendant's conduct must be shown by "outrageous, oppressive or intolerable conduct that creates substantial risk of tremendous harm to others." 155 Ariz. at 570. Subsequent cases have affirmed this standard. *See, e.g., Bradshaw*, 157 Ariz. at 422 ("[A]n 'evil mind' can be inferred from the evidence, including proof that defendant's conduct was outrageous in nature.").

## C.    Punitive Damages Standard

¶19    Having explored the relevant caselaw, we now clarify the punitive damages standard applicable in negligence cases.

¶20    We begin with the premise that punitive damages serve two functions: punishment and deterrence. *Linthicum*, 150 Ariz. at 330–31; *Hawkins*, 152 Ariz. at 497; *Gurule*, 152 Ariz. at 601; *Volz*, 155 Ariz. at 570; *Bradshaw*, 157 Ariz. at 424. But courts do not aim to punish and deter all negligent conduct by way of punitive damages, only that which involves "some element of outrage similar to that usually found in crime." *Gurule*, 152 Ariz. at 601 (quoting *Rawlings*, 151 Ariz. at 162); Restatement § 908 cmt. b. For this reason, our cases have repeatedly stated that courts may not award punitive damages based on mere negligence, gross negligence, or recklessness. *See Rawlings*, 151 Ariz. at 162; *Linthicum*, 150 Ariz. at 331; *Volz*, 155 Ariz. at 570; *see also Filasky*, 152 Ariz. at 599 n.3 ("[A] trial judge would commit error by including such phrases as 'gross negligence' or 'reckless disregard' in his jury instructions on punitive damages in a bad faith insurance case.").

¶21    This accords with our cases holding that a defendant may not be subject to civil punishment through punitive damages unless he or she acts "with a knowing, culpable state of mind." *Gurule*, 152 Ariz. at 601; *see also Rawlings*, 151 Ariz. at 162. Compensatory damages are sufficient to deter unintentional and even grossly negligent conduct; only a knowing culpability warrants punitive damages to curb future reprehensible behavior. *Gurule*, 152 Ariz. at 601 ("[U]nless the evidence establishes that . . . [the] defendant acted with an evil mind, punitive damages are unnecessary because compensatory damages adequately deter."). Requiring that the defendant evince an evil mind, as mandated by our previous decisions, "was intended to limit punitive damage awards" only to cases in which they further the objectives of punishment and deterrence. *Id.*; *Linthicum*, 150 Ariz. at 331; *see also State Farm Mut. Auto Ins. Co. v. Campbell*, 538 U.S. 408, 417–18 (2003) (explaining that procedural and substantive constitutional limitations on punitive damage awards prevent arbitrary deprivation of property).

¶22 Accordingly, we affirm the standard announced in *Volz*. To be entitled to punitive damages, once a plaintiff establishes that the defendant engaged in tortious conduct of any kind, intentional or negligent—that is, acted with an "evil hand," *see supra* ¶ 11—the plaintiff must prove the defendant engaged in such conduct with an "evil mind." *Volz*, 155 Ariz. at 570; *accord Rawlings*, 151 Ariz. at 162; *Linthicum*, 150 Ariz. at 331; *Gurule*, 152 Ariz. at 602. To establish an evil mind requires clear and convincing evidence that the defendant's actions either (1) intended to cause harm, (2) were motivated by spite, or (3) were outrageous, creating a "substantial risk of tremendous harm to others." *Volz*, 155 Ariz. at 570–71; *accord Bradshaw*, 157 Ariz. at 422.

¶23 In a claim arising out of negligence, by definition there is no intent to injure the plaintiff. Similarly, a negligent defendant is unlikely to be motivated by spite or ill will. Thus, the only means by which a plaintiff is likely to meet the punitive damage standard in a negligence action is by demonstrating that the outrageousness of the defendant's conduct is such that the defendant had an "evil mind" when engaging in such conduct.[2] *See Volz*, 155 Ariz. at 570 (stating in the context of a negligence action that "[t]he focus is on the wrongdoer's attitude *and conduct*" (emphasis added)); *see also Gurule*, 152 Ariz. at 602.

¶24 We therefore hold that to be entitled to punitive damages in a negligence action, a plaintiff generally must show that the defendant's conduct was "outrageous, oppressive or intolerable," and "create[d] [a] *substantial* risk of tremendous harm," thereby evidencing a "*conscious* and *deliberate* disregard of the interest[s] and rights of others." *Volz*, 155 Ariz. at 570 (emphasis added) (quoting *Gurule*, 152 Ariz. at 602). A "substantial risk of harm" is the product of outrageous conduct, which society typically deters by imposing criminal liability. *See Rawlings*, 151 Ariz. at 162 (citing to Arizona's statutory definition of criminal recklessness as one appropriate baseline for punitive damages); *see also* A.R.S. § 13-105(10) (defining a criminally culpable mental state as acting "intentionally, knowingly,

---

[2] For example, a jury can infer an evil mind "when a defendant continues a course of conduct with knowledge of the past harm caused by that conduct." *Gurule*, 152 Ariz. at 602. "[O]ther circumstances, alone or in combination, may [also] justify the inference of an evil mind." *Id.*; *see also Hawkins*, 152 Ariz. at 499 (asserting that pattern of dishonest or fraudulent conduct makes it "more probable" that the conduct is intentional); Restatement § 908 cmt. c (stating punitive damages are appropriate "when a tort . . . is committed for an outrageous purpose" even though no significant harm results).

recklessly or with criminal negligence"); *cf. Haralson v. Fisher Surveying, Inc.*, 201 Ariz. 1, 8 ¶ 36 (2001) (McGregor, J., concurring in part and dissenting in part) (describing punitive damages as "quasi-criminal" fines).

¶25　　　　To be clear, this holding does not require a plaintiff to establish criminal conduct to show that a defendant's conduct created a substantial risk of significant injury. Nor must a plaintiff identify an applicable criminal statute to qualify for punitive damages, although such evidence is a strong indication that the defendant's conduct is worthy of punishment and should be deterred by measures extending beyond having to compensate the plaintiff for his or her losses. Rather, a plaintiff must establish that the defendant knew, or intentionally disregarded, facts that created an unreasonable risk of physical harm—a risk substantially greater than that necessary to make his or her conduct negligent or even grossly negligent—and consciously disregarded that risk. *See* Restatement § 500 cmt. a; *see also Linthicum*, 150 Ariz. at 330–31; *Gurule*, 152 Ariz. at 602. Although it is enough that the defendant had reason to know of the facts creating a substantial risk, it is not enough that a defendant had reason to appreciate the severity of the risk; the defendant must have *actually* appreciated the severity of the risk before *consciously* disregarding it. *See Hutchinson ex rel. Hutchinson v. Luddy*, 870 A.2d 766, 771–72 (Pa. 2005) (rejecting the "reasonable man standard" for punitive damages and requiring that a defendant have "a subjective appreciation of the risk of harm to which the plaintiff was exposed"); *see also* Restatement § 500 cmt. a (distinguishing an objective definition of reckless disregard from a subjective one). Absent proof of the intent to cause harm or that the defendant acted out of spite or ill will, outrageous conduct will always be required to sustain a claim for punitive damages in negligence cases.

¶26　　　　The distinction between ordinary or even gross negligence and the conduct that permits punitive damages is critical. Indeed, it will be only the rare negligence case that meets this standard. We decline to stretch the bounds of punitive damage awards beyond those limits established by our precedent. *See Rawlings*, 151 Ariz. at 162.

**D.　Application**

¶27　　　　Turning to the facts of this case, we conclude that Vanderhoff's conduct as set forth in the trial court's ruling does not establish a prima facie case for punitive damages.

¶28 A close look at the facts reveals that Vanderhoff was negligent during two intermittent intervals, before he ran off the highway and after. We examine these individual allegations of negligence in turn.

### 1. Vanderhoff's conduct before running off the highway

¶29 The facts alleged, if proven at trial, would likely establish Vanderhoff's negligence in running off the highway. Vanderhoff testified that he (1) should have reduced his speed as he traveled downhill on a wet surface, (2) knew his Jake Brake and cruise control should not have been engaged while in the rain, and (3) was distracted by the cell phone call with his daughter. But negligence, even gross negligence, is not enough for punitive damages. *Supra* ¶ 20.

¶30 It is undisputed that Vanderhoff did not intend to injure anyone and was not motivated by spite or ill will. Plaintiffs instead cite to Vanderhoff's various admissions of negligence as proof that he consciously disregarded substantial risks, thereby justifying punitive damages. But Vanderhoff's after-the-fact admissions, without more, are insufficient to establish that he "*consciously* pursued a course of conduct knowing that it created a *substantial* risk of significant harm to others." *Gurule*, 152 Ariz. at 602 (emphasis added) (quoting *Rawlings*, 151 Ariz. at 162). We therefore look to the severity of Vanderhoff's conduct to determine whether it is the "something more" than gross negligence that evinces an evil mind. *See Volz*, 155 Ariz. at 570.

¶31 Although Vanderhoff's actions were admittedly negligent, and perhaps even grossly negligent, they did not amount to the sort of outrageous conduct required to establish an "evil mind." Vanderhoff's speed, though greater than may have been prudent given the weather and the size of his vehicle, was still at least ten miles per hour below the seventy-five-mile-per-hour speed limit. No doubt, a reasonable person with Vanderhoff's training and experience should have known to slow down even further on account of the rain and the downhill grade, but Vanderhoff's actions are not so far outside the realm of reasonable conduct such that this may be considered one of the "most egregious of cases" warranting punitive damages. *Linthicum*, 150 Ariz. at 332; *cf. Ranburger v. S. Pac. Transp. Co.*, 157 Ariz. 551, 554 (1988) (noting that even under pre-*Linthicum* standards, exceeding speed limit is insufficient to support a punitive damage award); *Quintero v. Rogers*, 221 Ariz. 536, 542 ¶ 22 (2009) (citing *Ranburger*, 157 Ariz. at 554) (to same effect). Neither is Vanderhoff's failure to disengage the Jake Brake and cruise control, which reflects, at most, a breach of truck driving safety protocol—that is, negligence.

¶32        Likewise, Vanderhoff's legal, *hands-free*, cell phone use can hardly be considered aggravated or outrageous conduct.  Furthermore, no evidence suggests that his talking on the phone was a proximate cause of him losing control of the vehicle, let alone a but-for cause of the subsequent collision that ultimately resulted in the deaths of others.  Awarding punitive damages on this basis would therefore be improper.  *See Saucedo ex rel. Sinaloa v. Salvation Army*, 200 Ariz. 179, 184 ¶ 19 (App. 2001) ("[T]he [underlying tortious] conduct giving rise to punitive damages must be a proximate cause of the harm inflicted.").

¶33        Vanderhoff may have been negligent in failing to reduce his speed to avoid hydroplaning and losing control of his vehicle, but his conduct did not amount to the "something more" that our precedents require to demonstrate an evil mind.  *See Volz*, 155 Ariz. at 570.

### 2.        Vanderhoff's conduct after running off the highway

¶34        Vanderhoff's conduct after the crash is arguably even less outrageous.   The fatal collision occurred about five minutes after Vanderhoff lost control of his truck and ran off the road.  Plaintiffs argue Vanderhoff's failure to place traffic safety triangles on the road or direct oncoming traffic during those five minutes justifies punitive damages because, according to highway safety regulations, he should have done this immediately.  But remaining in the vehicle for five minutes following an accident hardly rises to the level of outrageous conduct.

¶35        Likewise, it is doubtful Vanderhoff violated any law or regulation by remaining in his vehicle for five minutes after he lost control of his vehicle. The Code of Federal Regulations provides that a driver shall place traffic warning devices on the road "as soon as *possible*, but in any event *within 10 minutes*" of being stopped on the highway.  49 C.F.R. § 392.22(b)(1) (emphasis added).  By its terms, Vanderhoff substantially complied with the regulation by placing warning devices down immediately after the collision and within ten minutes of running off the road.  Moreover, even if his conduct violated such a regulation, without more, such failure is a far cry from the outrageous or quasi-criminal conduct sufficient to establish an evil mind.  *See Gurule*, 152 Ariz. at 601; *Rawlings*, 151 Ariz. at 162.

¶36        Although Vanderhoff should have exited his truck as quickly as possible to prevent another collision, his failure to do so is not unthinkable, much less outrageous or akin to criminal conduct. *See Gurule*, 152 Ariz. at 601; *Rawlings*, 151 Ariz. at 162.  Simply put, his failure to direct

or warn oncoming traffic within five minutes after he ran off the road is not enough for a jury to infer that Vanderhoff consciously disregarded a substantial risk of harm to others sufficient to justify punitive damages. *See Volz*, 155 Ariz. at 570.

**¶37**     We therefore conclude that, under the facts found by the trial court, Plaintiffs did not make a prima facie showing that the question of punitive damages would likely be submitted to the jury.

### III.     CONCLUSION

**¶38**     We vacate the court of appeals' order and reverse the trial court's order. Our opinion does not preclude the court from reconsidering the issue should additional facts come to light that justify submitting the question of punitive damages to the jury.